CARLTON, J.,
for the Court:
¶ 1. S.W.[1] filed a complaint against the Mississippi Department of Human Services (DHS) seeking damages he suffered resulting from DHS’s negligence while he was placed in the legal custody of DHS as a minor. In Mississippi Department of Human Services v. S.W., 974 So.2d 253, 264 (¶ 35) (Miss.Ct.App.2007), this Court affirmed the circuit court’s finding of liability based upon the breach of ministerial, nondiscretionary governmental duties by DHS, and this court reversed and remanded the case for a new trial on damages. The Mississippi Supreme Court subsequently denied certiorari. Miss. Dep’t of Human Servs. v. S.W., 973 So.2d 244 (Miss.2008).[2]
¶ 2. Upon remand, in lieu of a second trial, the parties allowed the circuit court to decide damages without submission of new evidence. DHS filed no motion in accordance with Mississippi Rule of Civil Procedure 52. The circuit court entered a $500,000 judgment in favor of S.W. DHS then filed a post-trial motion for reconsideration and amendment of judgment, requesting that the trial court reconsider S.W.’s entitlement to damages, which provided the court an opportunity to amend the judgment on that basis. However, DHS filed no motion seeking any additional findings of fact or conclusions of law pursuant to Mississippi Rule of Civil Pro *632 cedure 52. The circuit court denied DHS’s post-trial motion to reconsider and amend the judgment.
¶ 3. DHS appeals, claiming: (1) the circuit court erred in awarding anything more than nominal damages; (2) the circuit court’s factual findings with regard to the alleged “occurrences” were contrary to the overwhelming weight of the evidence; (3) the circuit court’s award of damages was without factual support, excessive, and based upon pure speculation; and (4) the circuit court’s award of damages exceeded the statutory limitations of liability found in Mississippi Code Annotated section 11-46-15 (Rev. 2002). “Where a trial court sits without a jury, its findings of fact will not be disturbed so long as there is substantial evidence in the record to support them.” Callahan v. Ledbetter, 992 So.2d 1220, 1224 (¶ 8) (Miss.Ct.App.2008); see also Jordan v. McAdams, 85 So.3d 932, 935 (¶ 23) (Miss.Ct.App.2012) (Where no post-trial motion is filed requesting additional findings of fact and conclusions of law as allowed by Mississippi Rule of Civil Procedure 52, no deficiency will be found in the trial court’s findings of fact for lack of more detail.). Since we find that the record reflects substantial evidence to support the award of damages and judgment of the trial court, we affirm.
FACTS
¶ 4. In the prior opinion of this Court, we affirmed the circuit court’s findings of liability upon ascertaining that the record reflected that DHS breached nondiscre-tionary, ministerial, and affirmative duties to act as required by DHS policy and regulations and to fulfill its statutory duty to protect and care for S.W. while in the custody of DHS.[3] The underlying facts and the determination of liability were resolved in this Court’s previous opinion.[4] This Court stated the facts as follows:
On October 4, 1996, fourteen-year-old S.W. was placed in the care and custody of DHS after substantiated reports that his mother, T.W., beat him with an extension cord. Later that month, DHS placed S.W. in the Region VII Chemical Dependency Unit (CDU) in Ackerman, Mississippi. Upon his arrival at CDU, S.W. met Larenzo Williams, a “youth care specialist” employed by CDU to assist the residents of the facility. S.W. alleged that shortly after his arrival at CDU, Williams engaged in sexual acts with him. Specifically, S.W. stated that he awoke to Williams inappropriately touching him under the covers. S.W. testified that this conduct went on twice a week for the entire time he was in CDU and that he never reported these instances of abuse because he feared reprisal from Williams in the form of punishment or a decrease in privileges and activities.
5.W. was later transferred by DHS to the Special Needs in State Placement (SNIPS) facility in Starkville, Mississippi, where he remained until he returned to the physical custody of T.W. on June 6, 1997. Shortly after S.W.’s transfer to the SNIPS facility, Williams was also transferred to the SNIPS facility. S.W. alleged that, upon his placement at SNIPS, Williams continued to engage in sexual acts with him such as, rubbing, touching and performing oral sex on him. S.W. stated that Williams would sometimes leave letters for him containing as much as sixty dollars. S.W. further stated that Rick Howard, another employee of SNIPS, regularly engaged in sexual acts with him including anal *633 sex, which S.W. performed on Howard. S.W. testified that the sexual activity occurred frequently-up to two or three times a week. S.W. stated that things got “out of control” at SNIPS because Williams had more power over him. Williams had authority to impose various punishments on S.W. such as early bedtime, time-out and confinement to his room. Williams also had authority to take away various recreational activities such as watching television, playing with the other children, listening to the radio and using the telephone. S.W. testified that when he would resist Williams’ sexual advances, he would sometimes lose his privileges or be bumped to a lower level of progression which made it more difficult for him to achieve the level which would allow him to return home. On June 6,1997, S.W. was released from SNIPS and returned to his mother’s home; however, S.W. remained in DHS custody until December 1997. Williams sent numerous romantic cards and letters to S.W. at his mother’s home. The cards and letters expressed Williams’ love for S.W., his desire to have a “continuing relationship,” and his frustration with S.W.’s failure to reciprocate. Williams also mailed pre-paid phone cards to S.W. to enable S.W. to call him inconspicuously. Despite S.W.’s effort to hide these items, T.W. eventually found them and contacted DHS to express her concern. Shortly thereafter a meeting was held with S.W., his mother, his grandmother, DHS social worker, Elsie Roarke, DHS regional director, Billie Sims, and DHS supervisor, Beth Leggett. In the presence of this group, S.W. was asked if he had been sexually abused by workers at SNIPS or CDU; he replied that he had not. DHS summarily determined that S.W. had not been abused. This meeting was the extent of DHS’s investigation. S.W. later brought a negligence action against DHS under the Mississippi Tort Claims Act (MTCA). The complaint sought compensatory and punitive damages as well as damages for mental and emotional distress. S.W. alleged that DHS neglected to carry out its duties to him while he was in their custody, which allowed him to be sexually abused. He alleged further that DHS failed to fully investigate the reported abuse and failed to ensure that he received medical treatment in the form of psychological counseling.
At trial, both Williams and Howard denied the allegations of sexual abuse. Williams testified that although he never engaged in any sexual activities with S.W., it probably would have happened because he had feelings for S.W. Williams admitted that he liked S.W. in the wrong way, as in love for another man. He stated that he had a desire for S.W. and had dreams of being with him. Williams’ cards and letters were also introduced at trial.
The trial court found that DHS breached its duty to protect and care for S.W. in three respects: (1) that DHS failed to make required monthly face-to-face contacts with S.W., (2) that DHS failed to sufficiently investigate the report of sexual abuse, and (3) that DHS failed to provide much needed counseling upon S.W.’s return home. The trial court determined that DHS’s negligent conduct subjected S.W. to sexual abuse thereby causing him damages. Accordingly, judgment was entered in favor for S.W. awarding $750,000 in damages.
S.W., 974 So.2d at 256-57 (¶¶2-7) (footnotes omitted).
¶ 5. In our prior opinion in this case, this Court evaluated whether the challenged governmental conduct was discretionary *634 and, if so, whether the choice or judgment at issue involved social, economic, or political policy. Id. at 258-59 (¶ 11). After evaluation of the evidence in the record, the applicable statutes, DHS regulations and policy directives, this Court found the following challenged DHS governmental functions mandatory and not discretionary: monitoring S.W.’s care and placement; investigating allegations of sexual abuse; and providing medical care to S.W. in the form of counseling. Id. at 259-260 (¶¶ 13-21). The record reflected substantial evidence showing that DHS possessed affirmative governmental duties to act to protect and care for S.W.,[5] a minor in its custody by court order. This Court stated:
We find that the challenged governmental functions were mandatory in nature and the discretionary function exemption does not shield DHS from suit in this case.
[[Image here]]
We affirm the findings of the trial judge that DHS breached each of the three duties identified in the order. Therefore, we affirm the trial judge’s finding as to liability. However we reverse and remand the case for a new trial on damages and instruct the trial judge to include in his or her order findings of fact which clearly identify what damage, if any, is attributed to each of the three breaches respectively. We further instruct the trial judge to assess damages for each breach in accordance with the applicable statutory limitation pursuant to Section 11-46-15(1) and to specify in his or her findings of fact under which provision damages are awarded. In the event an appeal is taken from the new trial on damages only, this will ensure that the reviewing court therein will be able to sufficiently address any issues pertaining to the limitations of liability under the MTCA.
Id. at 260-64 (¶¶ 21-36).
¶ 6. Then, on remand of this case, rather than have a new trial on damages, the parties agreed to submit the issues of damages to the circuit court for a decision based upon the record already before the court. The parties submitted proposed findings of fact and conclusions of law to the circuit judge, but DHS, as previously acknowledged, submitted no motion for findings of fact and conclusions of law in accordance with Mississippi Rule of Civil Procedure 52. The circuit court issued an Opinion and Order on March 25, 2010, where it ruled as follows:
THIS CAUSE was previously tried by this [cjourt and subsequently appealed by the [d]efendants[,j [DHS], The Court of Appeals remanded this matter for a new trial as to damages only. The parties appeared in [cjourt and agreed to allow the [cjourt to decide the issue on remand without offering any new evidence other than proposed findings of facts and conclusions of law. This [cjourt, after finding that liability has already been established, hereby assesses] damages as follows:
1. This [cjourt finds that the [djefen-dant breached its duties to the plaintiffs in three respects: 1) failing to make required face-to-face contacts with the plaintiff; 2) failing to properly investigate allegations of abuse; and 3) failing to provide counseling. As a result of these breaches, the [cjourt finds that the plaintiff has experienced a great deal of emotional *635 distress, mental pain, suffering, and humiliation. Accordingly, the plaintiff is entitled to an award of damages to be assessed against the defendant.
2. From the period of October 1996 through June 1997, DHS was obligated to have quarterly face-to-face visits with the plaintiff. During this period[,] DHS made only one visit, instead of the three required visits. For each visit DHS failed to initiate, the plaintiff is entitled to damages. The statutory cap for each occurrence during this period is $50,000. Miss.Code Ann. § 11 — 46—15(l)(a)[—](b). The [c]ourt finds that the plaintiff is entitled to $50,000 for each visit DHS failed to initiate during this period. Accordingly, for the period of October 1996 through June 1997, the plaintiff is entitled to $100,000.
3. For the period of July 1997 through December 1997, DHS was required to make monthly face-to-face visits. The record reflects DHS failed to make the monthly visits. For each visit DHS failed to initiate during this time period, the plaintiff is entitled to damages. The [cjourt finds that DHS missed six monthly visits which is tantamount to six separate occurrences. Therefore, the statutory cap for each occurrence during this time period is $250,000. Miss.Code Ann. § 11-46-15(l)(a[ — ] )(b). The [cjourt finds that plaintiff is entitled to $50,000 for each visit DHS failed to initiate during this period. Therefore, since DHS missed six monthly visits, the plaintiff is entitled to a sum of $300,000 for the missed visits during this time period.
4. The [cjourt will now address DHS’s failure to conduct an adequate investigation of abuse. The [cjourt finds the failure to investigate to be another breach of duty and therefore constitutes a separate occurrence. Therefore, the [cjourt awards $50,000 for breach of the duty to investigate abuse.
5. Finally, this [cjourt found that DHS breached it[s] duty to provide much needed counseling upon plaintiffs return home. The [cjourt finds the failure to provide counseling to be another breach of duty and therefore constitutes a separate occurrence. Therefore, the [cjourt awards $50,000 [for] failure to provide counseling.
6. The [cjourt finds that a [¡Judgment should be entered in favor of the plaintiff and against the defendant in the following respects:
a. Damages for failing to make face-to-face contact for the period of October 1996 — June 1997 — $100,000;
b. Damages for failing to make face-to-face contact for [the] period of July 1997 — December 1997— $300,000;
c. Damages for failure to investigate — $50,000; [and]
d. Damages for failure to provide counseling — $50,000.
Accordingly, the total damages awarded amounts to $500,000.
IT IS, THEREFORE, ORDERED AND ADJUDGED that the [djefendant is hereby ordered to pay $500,000 to [pjlaintiff.
IT IS FURTHER ORDERED AND ADJUDGED that a [¡Judgment containing the total amount of damages shall be presented by the plaintiff to the [cjourt for entry on or before April 9, 2010.
¶ 7. On May 25, 2010, the circuit court entered a final judgment that awarded S.W. damages of $500,000 and post-judgment interest at the rate of 8% per annum. Post trial, DHS filed a motion for reconsid *636 eration and amendment of judgment, which the circuit court denied.
¶ 8. DHS now appeals.
STANDARD OF REVIEW
¶ 9. In this Court’s previous opinion in 5.W., 974 So.2d at 256-57 (¶8), this Court stated the proper standard of review:
Claims brought under the MTCA are tried before the appropriate court without a jury. Miss.Code Ann. § 11-46-13(1) (Rev. 2002). The standard of review for a judgment entered following a bench trial is well settled. We review questions of law de novo. Miss. Dep’t of Mental Health v. Hall, 936 So.2d 917, 922 ([¶]6) (Miss.2006). The proper application of the MTCA is a question of law. City of Newton v. Lofton, 840 So.2d 833, 836 (¶ 7) (Miss.Ct.App.2003). A trial judge is accorded the same deference regarding his findings as is a chancellor and his findings will not be disturbed where they are support by substantial, credible and reasonable evidence. Jones v. Mississippi Transp. Comm’n, 920 So.2d 516, 518 (¶ [3]) (Miss.[Ct.App.2006]). We will only disturb the trial judge’s findings if the trial judge abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard. Id. As the trier of fact, the trial judge “has the sole authority for determining the credibility of the witness[es].” Thompson ex rel. Thompson v. Lee County Sch. Dist., 925 So.2d 57, 62 ([¶]7) (Miss.2006) (citations omitted).
DISCUSSION
¶ 10. In our prior opinion, this Court affirmed the circuit court’s decision as to DHS’s liability to S.W. This Court found that the record supported the circuit court’s decision that DHS breached various affirmative, nondiscretionary, and ministerial duties owed to S.W., a minor in DHS’s custody, to fulfill DHS’s statutory obligations set forth in DHS regulations to protect and care for S.W. while in DHS’s custody.[6] S.W., 974 So.2d at 264 (¶36). This Court, however, reversed the circuit court’s award’ of damages because we found that the circuit court provided “an insufficient basis for review” of damages. Id. at (¶ 35). This Court held that “[t]he trial judge failed to disclose how he arrived at the $750,000 damage award” since he failed to attribute occurrences to assessment of damages. Id. This Court gave further guidance to the circuit judge on remand in stating the following:
However[,] we reverse and remand the case for a new trial on damages and instruct the trial judge to include in his or her order findings of fact which clearly identify what damage, if any, is attributed to each of the three breaches respectively. We further instruct the trial judge to assess damages for each breach in accordance with the applicable statutory limitation pursuant to [sjection 11-46-15(1) and to specify in his or her findings of fact under which provision damages are awarded. In the event an appeal is taken from the new trial on damages only, this will ensure that the reviewing court therein will be able to sufficiently address any issues pertaining to the limitations of liability under the MTCA.
Id. at 264 (¶ 36).
¶ 11. In addition to the supreme court’s denial of certiorari review of our prior *637 opinion in this case, the supreme court cited our prior opinion in S.W. in Fortenberry v. City of Jackson, 71 So.3d 1196, 1201 (¶ 13) (Miss.2011), explaining that DHS converted discretionary functions into ministerial functions through its policy manual, setting forth specific duties in its agency regulations and policy directives. See also In re EK, 20 So.3d 1216, 1227 n. 2 (Miss.2009) (acknowledging the special relationship of DHS and S.W. because S.W. was a child placed in DHS’s custody, and DHS therefore possessed a duty to investigate).
1112. Upon remand, the circuit court awarded damages to S.W., finding that due to the breached duties by DHS, S.W. suffered great emotional distress, mental pain and suffering, and humiliation. The circuit court set forth its findings as to the separate occurrences of breached ministerial, nondiscretionary duties to S.W. resulting in repeated harm.
I. Whether the Circuit Court Erred in Awarding Anything More than Nominal Damages.
II. Whether the Circuit Court’s Award of Damages was Without Factual Support, Excessive, and Based Upon Pure Speculation.
¶ 13. DHS argues that S.W. failed to produce evidence to support an award of damages. DHS further contends that if any damages are to be allowed, then S.W. is only entitled to nominal damages.
¶ 14. DHS claims that since DHS employees were not the ones that sexually assaulted S.W., then no damages against DHS should be awarded. However, DHS’s argument fails to acknowledge the consequences of the negligence stemming from the affirmative duties breached by DHS to protect and care for S.W. while in their custody.[7] Mississippi negligence law recognizes that separate concurrent or successive acts or omissions of negligence can combine to produce an indivisible harm. D & W Jones v. Collier, 372 So.2d 288, 292 (Miss.1979).[8] The argument raised by DHS also fails to address the special relationship and duties owed to S.W. as a ward placed in its custody.[9] This argument was addressed in this Court’s prior opinion. R.W., 974 So.2d at 263 (¶¶ 31-32). As we explained, the liability of the State springs from the duty owed to protect the specific victim, S.W., placed in its legal custody, not merely from whether the State possessed a duty to supervise the worker. The supreme court has acknowledged the special relationship existing between DHS and S.W., as a child in its legal custody. See Fortenberry, 71 So.3d at 1201 (¶ 13); Tunica County v. Gray, 13 So.3d 826, 832 (¶ 30) (Miss.2009); In re EK 20 So.3d at 1227 n. 2. Our supreme court has additionally explained that in Entrican v. Ming, 962 So.2d 28, 36 (¶ 24) (Miss.2007), a defendant tortfeasor may be “held liable for his failure to anticipate an easily-predicted intervening cause and to properly guard against it.” The jEntrican court explained that such events were foreseeable. Id,.; see also Pargas of *638 Taylorsville, Inc. v. Craft, 249 So.2d 403, 408 (Miss.1971) (finding defendant can be charged only with anticipating reasonable probabilities).
¶ 15. With respect to the performance of the duties owed to S.W. by DHS, as his legal custodian, testimony was given by S.W., S.W.’s DHS case workers, the DHS Rule 30(b)(6) witness,[10] other DHS employees, and employees of the Community Counseling Services (CCS). Susan Baker,[11] the Chief Operations Officer and Clinical Director for CCS, also testified and explained that CCS provided the services of the Choctaw Chemical Dependency Unit (CDU) in Ackerman, Mississippi, and the Special Needs in State Placement (SNIPS) facility in Starkville, Mississippi.[12] A legal guardian must consent to a child’s admission to CDU or the SNIPS facility for treatment, and Baker provided that neither CDU nor the SNIPS facility assumed custodial responsibility for the children placed there. The record reflects that on September 17, 1996, DHS documented that it previously received a complaint of abuse of S.W. by his parent. The record shows that S.W. was placed in DHS custody for abuse and neglect on October 4, 1996, but S.W. was placed in CDU on September 14, 1996, prior to that order of custody.[13]
¶ 16. S.W. testified that no one told him why he was going to CDU, and the record shows that his grandmother called DHS wanting S.W. to come live with her while he was at CDU. The record shows that DHS policy dictated that no child would be removed from a home unless the court order provided that the child’s removal from his home was necessary in that continuation in the home would be contrary to his welfare. However, the record shows that DHS placed S.W. in CDU prior to issuance of the October 4, 1996 custody order and without a court order authorizing his removal.[14]
¶ 17. DHS remained the legal custodian responsible for S.W.’s care and protection until relieved by court order, and the record reflects no basis for admitting S.W. to CDU due to his mother’s abuse and neglect of him by whipping him with a belt. In explaining that the CCS entities, CDU and SNIPS, took no responsibility for physical accountability of the children placed there, Baker provided that custody and custodial responsibility remained with the legal guardian, such as DHS, when a child was placed in DHS’s custody. Baker’s testimony reflects that CDU provided medical substance-abuse treatment and that SNIPS provided child care, but neither service, provider agreed, accepted, or was awarded custody of the children placed therein. Baker further explained that CDU was not the appropriate placement for a child in the custody of DHS for only abuse and neglect. CDU placement required documented abuse of a substance *639 more extreme than marijuana, and Baker did not recall S.W. using anything more extreme. CDU was not classified as ' a long-term facility, and the average stay was twenty-eight to thirty days.
¶ 18. However, S.W. remained at CDU for a longer period than the usual thirty days, even though he was in custody due to neglect and abuse, not substance abuse or any delinquency adjudication, and Baker noted that S.W. suffered from some depressive episodes at CDU due to being in DHS’s custody. She also explained that during the relevant time period, three unrelated allegations of sexual abuse and two allegations of physical abuse occurred. She further explained that when S.W.’s allegations of abuse came to her attention, Ricky Howard and Lorenzo Williams had already been terminated.[15] S.W.’s case worker also explained that her notes reflected that in March 1997, S.W. always complained that he felt ready to be discharged, but she explained to him that some SNIPS staff must have felt that he was not ready, without inquiring herself as to why or who of the SNIPS staff determined S.W. was not ready for discharge. The record contains DHS’s policy manual setting forth ministerial duties to act to care and protect children in its custody and the testimony establishing breach of those duties in the circuit court’s findings.
¶ 19. S.W. was placed by the court into DHS’s custody on October 4, 1996, and he remained in DHS’s custody for over fourteen months, until September 1997. Throughout these months, DHS placed S.W. in CDU and the SNIPS facility. DHS regulations impose on its social workers a ministerial duty to use “face-to-face” consultations with each child under DHS supervision, at least once per quarter while any child resides in a licensed care facility, and at least once per month while the child resides elsewhere. A required component of the duties of a DHS social worker is to get the child’s psychological condition assessed, and treated if recommended, by a mental-health professional. If personally transporting the child to such a professional is practically required for the child to get such treatment, then the DHS social worker is required to personally transport the child. If any evidence of adult abuse of a child arises during the child’s custody with DHS, then DHS regulations require DHS to interview the alleged perpetrator, to interview the minor “privately, separately, and in a non-threatening place,” and to make an unannounced visit to any residential facility involved. DHS regulations require these ministerial duties to be performed without discretion. DHS employees testified that DHS was obligated like a parent to children in its custody. The record shows S.W.’s case worker, Leggett, received an official reprimand for failing to follow procedure and policy to provide appropriate care and services to children and families in prevention, supervision, and custody cases.
¶ 20. The record reflects that nothing was done in violation of the statutory mandates of Mississippi Code Annotated section 43-15-18(3) (Rev. 2009) to contact any interested family members within the first two months of placement. The record shows that while placed in the SNIPS facility by DHS, S.W. reported to a mental-health counselor that he felt picked on *640 by staff and peers; that S.W.’s mental condition was depressed, upset, and angry; and that he was threatening to run away. Baker acknowledged documentation that S.W. was depressed at CDU. Also, the record shows that S.W. begged over the phone to no avail that DHS place him in a foster home. The record reflects S.W. provided substantial, credible evidence that DHS breached its duties to care for, to protect, and to supervise S.W. DHS breached these duties by inappropriately placing S.W. at CDU as a neglected and abused child; by doing so prior to receipt of a court order for custody or removal; and by failing to adequately supervise, protect, and care for him in accordance with DHS policies and regulations after leaving him in these facilities where he suffered repeated sexual abuse while in DHS custody.
¶ 21. When the State places a child in a state-regulated foster care, the State has entered into a special relationship with that child that imposes certain affirmative duties to be performed by the government custodian, as shown in the governing statutes, regulations, and policies of DHS. See Miss.Code Ann. § 43-15-5.[16] As noted, the record shows DHS placed S.W. at CDU prior to receipt of the October 4, 1996 custody order and without a removal order, over the request of his grandmother to place him with her. The record fails to reflect that CDU was an appropriate placement for S.W., a child placed in its custody for abuse and neglect. DHS nonetheless placed him there despite the basis of his legal custody and mental-health needs, and DHS failed as his legal custodian to supervise or monitor his care and welfare at CDU or SNIPS, where he suffered sexual abuse. When S.W. was transferred to SNIPS from CDU, his initial abuser, Williams, was also transferred to SNIPS, where Williams continued to abuse S.W., and then later another worker, Howard, sexually abused S.W. The record supports the circuit court’s findings that DHS failed to conduct two of its three mandatory quarterly visits between October 1996 and June 1997, and that DHS missed six monthly visits between June 1997 and December 1997 and failed to interview or provide counseling for S.W.
¶ 22. The record reflects substantial support for the circuit court’s findings of negligence by DHS, and therefore the question before the circuit judge was whether the separate concurrent or successive negligent acts, or negligent omissions of its duty to act, by DHS constituted a substantial factor in bringing about the harm to S.W. Glover ex rel. Glover v. Jackson State Univ., 968 So.2d 1267, 1277 n. 11 (Miss.2007); Entrican, 962 So.2d at 36 (¶ 24). We note, as explained in Entrican, to be liable under negligence law, a particular defendant’s negligence need not be the sole cause of the injury suffered if his negligence concurring with one or more efficient causes proximately causes the plaintiffs harm. Entrican, 962 So.2d at 32 (¶ 12). The affirmative duties of DHS to protect and care for children placed in its custody and the nondiscre-tionary duties imposed by DHS’s own policies and regulations provide evidence of duty and foreseeability. Precedent establishes that the fact that DHS failed to foresee the extent of harm or the manner of harm does not prevent liability for its negligence. See generally Rein v. Bench *641 mark Constr. Co., 865 So.2d 1134, 1143-45 (¶ 29-34) (Miss.2004); Doe ex rel Doe v. Wright Sec. Servs., Inc., 950 So.2d 1076, 1079 (¶ 12) (Miss.Ct.App.2007). See also Restatement (Second) of Torts § 435 (1965).[17]
¶ 23. Under our standard of review, we must accord the circuit judge, as the factfinder sitting without a jury, the same deference regarding his findings as that of a chancellor in considering the assignments of error raised by DHS. Jones v. Miss. Transp. Comm’n, 920 So.2d 516, 518 (¶3) (Miss.Ct.App.2006). We will not disturb the circuit judge’s findings “where they are supported by substantial, credible, and reasonable evidence.” Id. In reviewing the circuit court’s award of damages for emotional injuries, we acknowledge that a plaintiff seeking emotional damages as a result of ordinary negligence must show some resulting demonstrable harm, either physical or mental injury. Evans v. Miss. Dep’t Human Servs., 36 So.3d 463, 476 (¶ 52) (Miss.Ct.App.2010) (citing Ill. Cent. R.R. Co. v. Haiukins, 830 So.2d 1162, 1174 (¶ 26) (Miss.2002)).
¶24. In Adams v. U.S. Homecrafters, Inc., 744 So.2d 736, 743 (¶ 21) (Miss.1999), the supreme court embraced the adoption of “the term ‘demonstrable harm’ in place of ‘physical injury,’ indicating] that the proof may solely consist of evidence of a mental injury without physical manifestation.” Therefore, “[i]n order to recover emotional distress damages resulting from ordinary negligence, [S.W.] must prove ‘some sort of physical manifestation of injury or demonstrable harm, whether it be physical or mental, and that harm must have been reasonably foreseeable to the defendant.’ ” Randolph v. Lambert, 926 So.2d 941, 946 (¶ 17) (Miss.Ct.App.2006). We further acknowledge that a plaintiff bears the burden of going forward with sufficient evidence to prove damages by a preponderance of the evidence. Paz v. Brush Engineered Materials, Inc., 949 So.2d 1, 3 (¶ 5) (Miss.2007) (quoting Miss. Dep’t of Mental Health v. Hall, 936 So.2d 917, 922 (¶ 7) (Miss.2006)). “The assessment of damages constitutes a finding of fact,[18] and the appellate court reviews an award of damages under the clearly erroneous standard.” Greater Canton Ford Mercury, Inc. v. Lane, 997 So.2d 198, 206 (¶ 30) (Miss.2008); Thompson ex rel. Thompson v. Lee County Sch. Dist., 925 So.2d 57, 72 (1123) (Miss.2006) (“It is primarily the province of the jury and in a bench trial the judge to determine the amount of damages to be awarded and the award will normally not be set aside unless so unreasonable in amount as to *642 strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.”). Our standard of review requires that “a trial court’s decision as to damages will not be disturbed so long as the ruling is supported by substantial, credible, and reasonable, evidence.” Ledbetter, 992 So.2d at 1230 (¶ 25).
¶ 25. In addressing the sufficiency of the evidence of damages in the record, we note that the record contains S.W.’s own testimony regarding the damages he suffered while in DHS custody. The record also shows medical documentation of manifestations of his mental injuries. Baker provided that S.W. was depressed over being in DHS custody while at CDU. At the Starkville facility, S.W. received individual therapy noting depression, anxiety, and anger. Additionally, the record shows that S.W. received treatment from other mental health professionals after his release from DHS custody. After release, S.W. first received treatment from a private psychiatrist at the Mississippi Neu-ropsychiatric Clinic, and later received therapy from Dr. David Byron Jones. The psychiatrist with the Mississippi Neu-ropsychiatric Clinic documented the impact of the abuse S.W. endured while in DHS custody, describing that S.W. suffered from constant anger and frustration causing him to respond with crying or violence to any disagreement with family. The psychiatrist also noted that S.W.’s entire attitude changed while in DHS custody-
¶ 26. Then, two years after his release from DHS custody, S.W. confided in another mental-health professional, Dr. Jones, a licensed professional counselor, regarding the abuses that he had endured. Dr. Jones determined that S.W. suffered from anxiety and depression from the traumatic events and abuse that occurred while he was in DHS custody. Dr. Jones also found that S.W. could not cope with the trauma suffered, and S.W. needed counseling. As a result of the trauma, S.W. lacked the ability to trust others and exhibited anger and depression. The record shows that S.W. expressed an underlying heterosexual sexual preference, and he suffered from anger and confusion resulting from the homosexual sexual acts he was required to perform while in custody. At trial, seven years after release from DHS custody, S.W. testified that he still suffered from anger and that he cried all the time, as a result of the trauma and abuse suffered in DHS custody. DHS records reflect that DHS recommended S.W. receive mental-health treatment upon his release from treatment at CDU and SNIPS but while still in DHS custody. However, DHS failed to ensure he received that counseling even though DHS still maintained custody. The Mississippi Supreme Court has consistently held that where it has been shown that damage happened, then recovery of damages are not precluded because of uncertainty of extent of the damages. Grossnickle, 716 So.2d at 1025 (¶ 133). See also Nichols v. Stacks, 485 So.2d 1034 (Miss.1986) (“The rule that damages, if uncertain, cannot be recovered applies to their nature, and not to their extent. If the damage is certain, the fact that its extent is uncertain does not prevent recovery.”).
¶ 27. The circuit judge’s award of damages is supported by substantial, credible evidence in the record as displayed by the following: S.W.’s own testimony; the individual therapy treatment at the Starkville facility for anxiety, anger, and depression; treatment by the psychiatrist with the Mississippi Neurop-sychiatric Clinic describing manifestations of depression, anxiety, gender-identity confusion, anger, inability to trust others, and coping difficulties; Dr. Jones’s treatment for depression and anxiety; the overwhelming evidence of sexual abuse of S.W., negligent care, and inappropriate *643 placement at CDU; the continued pursuit of S.W. by one of the perpetrators upon his release; and DHS’s failure to properly investigate the reported abuse or provide S.W. with much needed counseling and psychological services. In addressing the sufficiency of the evidence in support of the circuit court’s award of damages, we recognize that the supreme court has held that the harm need not have a physical manifestation, but the plaintiff must prove some sort of injury whether physical or mental. Adams, 744 So.2d at 743 (¶ 21).[19] The record reflects that S.W. provided sufficient evidence of a demonstrable harm regarding his mental injuries as shown by evidence of the treatments of three mental-health professionals and his own testimony. We are mindful that in Thompson, 925 So.2d at 62 (¶ 7), the Mississippi Supreme Court stated that the circuit judge, sitting as the factfinder, is the sole authority for determining the credibility of witnesses, and where there is conflicting evidence, the appellate court will give great deference to the findings of the circuit judge. The Thompson court further noted:
It matters not what this Court may have done if placed in the trial court’s fact-finding • role. It matters only that in exercising our mandated appellate review, we can confidently determine the trial court’s findings of fact “are supported by substantial, credible, and reasonable evidence.”
Id. at 71 (¶ 20). Additionally, “[bjecause of the jury verdict in favor of the appellee [S.W.], this Court resolves all conflicts in the evidence in [his] favor. This Court also draws in the appellee’s favor all reasonable inferences which flow from the testimony given.” Sw. Miss. Reg’l Med. Ctr. v. Lawrence, 684 So.2d 1257, 1267 (Miss.1996); see Nichols, 485 So.2d at 1038; Cain v. Mid-South Pump Co., 458 So.2d 1048, 1050 (Miss.1984) (where reasonable certain damage occurred, then mere uncertainty as to amount will not preclude right of recovery of damages).
¶ 28. In this case, the circuit judge considered the evidence, weighed it, and found in favor of S.W. Since the evidence in the record provides substantial, credible evidence in support of the verdict of the circuit court, we find the first two assignments of error lack merit.
III. Whether the Circuit Court’s Factual Findings with Regard to the Alleged “Occurrences” was Contrary to the Overwhelming Weight of the Evidence.
IY. Whether the Circuit Court’s Award of Damages Exceeded the Statutory Limitations of Liability Found in Mississippi Code Annotated Section 11-46-15.
¶ 29. DHS argues that if S.W. was in fact entitled to an award of damages, the *644 amount of damages awarded by the circuit court was outrageous, speculative, grossly excessive, and in excess of the statutory cap.[20] DHS claims that as a factual, legal, and practical matter, the circuit court’s findings are unsound, and DHS asserts that S.W. did not establish that he suffered a separate injury valued at $50,000 for each of DHS’s breaches. We must turn to the findings of the circuit court and the controlling law to review these allegations of error.
¶ 30. Our supreme court has explained that where wrongful conduct is repeated over a period of time, the wrongful conduct gives rise to a new cause of action each time it is repeated. See Pierce v. Cook, 992 So.2d 612, 619 (¶ 25) (Miss.2008); see also Estate of Fedrick ex rel. Sykes v. Quorum Health Res., Inc., 45 So.3d 641, 643 (¶¶8-9) (Miss.2010) (finding that a nursing home’s failure to provide nutrition to a patient could constitute a repeated injury).
¶ 31. On remand, the circuit court awarded S.W. a total of $500,000 in damages. As stated, the circuit judge specifically found as follows:
1.This [cjourt finds that the [djefen-dant breached its duties to the plaintiffs in three respects: 1) failing to make required face-to-face contacts with the plaintiff; 2) failing to properly investigate allegations of abuse; and 3) failing to provide counseling. As a result of these breaches, the [cjourt finds that the plaintiff has experienced a great deal of emotional distress, mental pain, suffering, and humiliation. Accordingly, the plaintiff is entitled to an award of damages to be assessed against the defendant.
2. From the period of October 1996 through June 1997, DHS was obligated to have quarterly face-to-face visits with the plaintiff. During this period[,j DHS made only one visit, instead of the three required visits. For each visit DHS failed to initiate, the plaintiff is entitled to damages. The statutory cap for each occurrence during this period is $50,000. Miss.Code Ann. § 11^6-15(l)(a)[-](b). The [cjourt finds that the plaintiff is entitled to $50,000 for each visit DHS failed to initiate during this period. Accordingly, for the period of October 1996 through June 1997, the plaintiff is entitled to $100,000.
3. For the period of July 1997 through December 1997, DHS was required to make monthly face-to-face visits. The record reflects DHS failed to make the monthly visits. For each visit DHS failed to initiate during this time period, the plaintiff is entitled to damages. The [cjourt finds that DHS missed six monthly visits which is tantamount to six separate occurrences. Therefore, the statutory cap for each occurrence during this time period is $250,000. Miss.Code Ann. § 11-^46 — 15(1)(a)[—](b). The [cjourt finds that plaintiff is entitled to $50,000 for each visit DHS failed to initiate during this period. Therefore, since DHS missed six monthly visits, the plaintiff is entitled to a sum of $300,000 for the missed visits during this time period.
*645 4. The [c]ourt will now address DHS’s failure to conduct an adequate investigation of abuse. The [c]ourt finds the failure to investigate to be another breach of duty and therefore constitutes a separate occurrence. Therefore, the [c]ourt awards $50,000 for breach of the duty to investigate abuse.
5. Finally, this [c]ourt found that DHS breached it[s] duty to provide much needed counseling upon plaintiffs return home. The [c]ourt finds the failure to provide counseling to be another breach of duty and therefore constitutes a separate occurrence. Therefore, the [c]ourt awards $50,000 [for] failure to provide counseling.
6. The [c]ourt finds that a ^judgment should be entered in favor of the plaintiff and against the defendant in the following respects:
a. Damages for failing to make face-to-face contact for the period of October 1996-June 1997-$100,000;
b. Damages for failing to make face-to-face contact for [the] period of July 1997-December 1997-$300,000;
c. Damages for failure to investigate-$50,000; [and]
d. Damages for failure to provide counseling-$50,000.
Accordingly, the total damages awarded amounts to $500,000.
¶ 32. The record shows S.W. suffered repeated injury from being sexually abused and from the lack of care and protection while placed in DHS’s custody. The record also shows DHS breached non-diseretionary, ministerial duties to protect and care for S.W. while he was in its custody, and S.W. was thereafter subjected to repeated acts of neglect, delinquency, misconduct, and sexual abuse. See Fortenberry, 71 So.3d at 1201 (¶ 13) (acknowledging that DHS policy regulations addressed in R.W. constituted ministerial, nondiscretionary duties to act); In re E.K, 20 So.3d at 1227 n. 2 (recognizing that a special relationship is created when a child is placed in DHS’s custody).
¶ 33. The circuit court, sitting as the factfinder, found that DHS’s failure to act, when required to do so by DHS regulations, breached specific and separate affirmative ministerial and nondiscretionary duties, and as a result, S.W. endured repeated abuse causing him severe emotional injury and harm. See generally Miss. Transp. Comm’n v. Montgomery, 80 So.3d 789, 795 (¶ 19) (Miss.2012). The supreme court adheres to a strictly limited standard of review where the circuit judge sits as the finder of fact. Damages are not merely advisory and “generally will not be ‘set aside unless so unreasonable as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.’ ” Doe ex rel Doe v. N. Panola Sch. Dist., 906 So.2d 57, 61 (¶ 9) (Miss.Ct.App.2004); see also Maldonado v. Kelly, 768 So.2d 906, 908 (¶ 4) (Miss.2000); Duggins v. Guardianship of Washington ex rel. Huntley, 632 So.2d 420, 430 (Miss.1993); Indep. Life & Accident Ins. Co. v. Peavy, 528 So.2d 1112, 1120 (Miss.1988); see generally Robertson v. Chateau Legrand Prop. Owner’s Ass’n, Inc., 39 So.3d 931, 937-38 (¶¶ 18-23) (Miss.Ct.App.2009) (discussing overt acts giving rise to new cause of action). The supreme court addressed foreseeability in Glover, 968 So.2d at 1276-77 (¶ 29), and acknowledged the interdependent and intertwined relationship of foreseeability and proximate cause. Glover provided, in part, as follows:
No citation of authority is necessary for the proposition that, to recover for injuries in a negligence claim, a plaintiff must prove that the defendant was negligent, and that such negligence was the proximate cause, or a proximate contrib *646 utory cause, of the injuries. The legal definition of negligence is fairly simple, universally applied, and likewise needs no citation of authority. Negligence is doing what a reasonable, prudent person would not do, or failing to do what a reasonable, prudent person would do, under substantially similar circumstances. The simplicity of this definition of negligence obscures the complexity of the concept of proximate cause.
Id. The supreme court in Glover also explained that “[t]he test is slightly different in cases where a plaintiffs injuries are brought about by the negligence of more than one tortfeasor.” Id. at 1277 n. 11. “In such cases, the test is whether the negligence of a particular tortfeasor was a substantial factor in bringing about the harm.” Id. (citation omitted). As noted, DHS placed S.W. in CDU’s custody prior to court-ordered custody and with no removal order. While there, S.W. continuously suffered from a lack of protection and adequate care, as required by DHS policies and regulations, and S.W. suffered and endured repeated sexual abuse. The supreme court in Pierce, 992 So.2d at 619 (¶ 25), explained that wrongful conduct that is repeated, until desisted, gives rise to a new cause of action for each time the wrongful conduct occurs. In this ease, the breach by DHS of its ministerial duty to S.W., where an affirmative duty existed to protect and care for its ward, caused S.W. to be subjected to repeated sexual assaults and harm after each dereliction of duty by DHS. In Pierce, the supreme court provided as follows regarding a new cause of action for continual wrongful acts:
We previously have defined the continuing tort doctrine as follows:
[Wjhere a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury, or when the tortious acts cease. Where the tor-tious act has been completed, or the tortious acts have ceased, the period of limitations will not be extended on the ground of a continuing wrong.
A “continuing tort” is one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation.
Stevens v. Lake, 615 So.2d 1177, 1183 (Miss.1993) (emphasis in original) (quoting C.J.S. Limitations of Actions § 177 at 230-31 (1987)). A few years after Stevens, we again addressed the continuing tort doctrine in Smith v. Franklin Custodian Funds, Inc., 726 So.2d 144 (Miss.1998). Addressing our decision in Stevens, we stated:
Indeed, we opined that continuing or repeated injuries can give rise to liability even if they persist outside the time period for the initial injury, but we noted that the defendant must commit repeated acts of wrongful conduct. Stevens, 615 So.2d at 1183 (citing Hendrix v. City of Yazoo City, 911 F.2d 1102 (5th Cir.1990)). We have held that we will not apply the continuing tort doctrine when harm reverberates from one wrongful act or omission. Id.
Smith, 726 So.2d at 148-49[.]
Id. (emphasis added).
¶ 34. In this case, the record supports the circuit court’s award of damages for each separate breach of ministerial duties by DHS as a separate occurrence which caused S.W. to suffer repeated tor- *647 tious damage and harm.[21] As previously noted, the record clearly shows that S.W. endured repeated sexual abuse as a result of the lack of supervision, protection, and appropriate care by DHS. This case does not involve a situation where harm reverberates from a single act or omission. See id. at 619-20 (¶¶ 25-26).[22] The circuit judge, as the factfinder, specified the separate breaches of ministerial duties, the occurrences here causing S.W. to suffer repeated damage due to the negligent conduct of DHS. The record reflects substantial support for the circuit court’s findings and award of damages: the testimony of S.W.; the testimony of DHS witnesses, including the DHS Rule 30(b)(6) witness; statutes; DHS policy and regulations; and treatment of three mental-health providers showing manifestations of emotional damages. Since the record supports the findings and award of damages by the circuit judge, we must affirm the circuit court’s decision. Grossnickle, 716 So.2d at 1017 (¶ 86); Woods v. Burns, 797 So.2d 331 (Miss.Ct.App.2001). It is within the province of the factfinder to determine the amount of damages to be awarded. Lewis v. Hiatt, 683 So.2d 937, 941 (Miss.1996). The award in this case by the circuit court is neither unreasonable nor outrageous and falls within the statutory caps[23] as explained in the findings of the circuit court. See id.
¶ 35. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., AND RUSSELL, J„ CONCUR. FAIR, J„ CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BARNES, ISHEE, ROBERTS AND MAXWELL, JJ.

. This Court uses fictitious names for the minor and his mother to protect the identity of the minor.

. See TXG Intrastate Pipeline Co. v. Grossnickle, 716 So.2d 991, 1019 (¶ 97) (Miss.1997) (articulating the law-of-the-case doctrine).

. See Miss.Code Ann. § 43-15-5 (Rev. 2009).

. See Grossnickle, 716 So.2d at 1019 (¶ 97).

. See Fortenberry v. City of Jackson, 71 So.3d 1196, 1201 (¶ 13) (Miss.2011) (acknowledging that in S.W., 974 So.2d at 256-260 (¶¶ 1-21), we held that DHS regulations constituted ministerial duties).

. See Miss. Transp. Comm'n v. Montgomery, 80 So.3d 789, 795 (¶ 19) (Miss.2012). See also Miss.Code Ann. § 43-15-5(1) (DHS is required “to administer or supervise all pub-lie child welfare services,” and to "provide for the care of dependent and neglected children in foster family homes or in institutions[.]”).

. See Fortenberry, 71 So.3d at 1201 (¶ 13); Tunica County v. Gray, 13 So.3d 826, 832 (¶ 30) (Miss.2009).

. See generally Hannah v. Gulf Power Co., 128 F.2d 930, 931 (5th Cir.1942); Entrican v. Ming, 962 So.2d 28, 35-36 (¶¶ 24-25) (Miss.2007). See also 57A Am. Jur. Negligence § 515 (2004) (discussing concurrent negligence); Restatement (Second) of Torts § 439 (1965).

.DHS "shall have authority and it shall be its duty to ... administer and supervise the licensing and inspection of all private child placing agencies[J” Miss.Code Ann. § 43-15-5(1).

. See M.R.C.P. 30(b)(6).

. Baker is also a psychiatric nurse.

. Baker testified that both the CDU and the SNIPS facility were now closed.

. The Hinds County Youth Court placed S.W. in DHS custody by order dated October 4, 1996, when he was fourteen years and eleven months old, and custody was returned to his mother on September 12, 1997.

. Mississippi Code Annotated section 43-15-13 (Rev.2009) sets forth statutory goals for children placed in DHS custody that include protecting and promoting the health, safety and welfare of the children, preventing unnecessary separation from their families, and assuring their safe and adequate care away from their homes in cases where they cannot be returned home or cannot be placed for adoption. Section 43-15-13(3) requires DHS to contact the natural parents and any interested relatives during the first two months of entry into the foster-care system.

. Williams was terminated for inappropriate behavior in the workplace shortly before Baker became aware of the allegations. Howard lost his position as a part of downsizing since DHS cut funding from $205 a day to $141 a day. Baker stated that when funding was to be reduced even further, both CDU and the SNIPS facility closed because operating at such low levels of funding created dangerous conditions. The allegations against Howard were never investigated since he was no longer an employee.

. See generally Keyes v. Huckleberry House, 936 F.2d 578 (9th Cir.1991) (finding that a private facility might be found to be state actor if child was ward of the state and the state provided care through the private agency); Hanis ex rel. Litz v. Lehigh County Office of Children & Youth Sens., 418 F.Supp.2d 643 (E.D.Pa.2005); Jordan v. City of Philadelphia, 66 F.Supp.2d 638 (E.D.Pa.1999).

. DHS possesses authority to administer all public child-welfare services. Miss.Code Ann. § 43-15-5. At the time of placement of a child, DHS shall implement concurrent planning. Miss.Code. Ann. § 43 — 15—13(2)(f). "[DHS] shall administer a system of individualized plans and reviews once every six (6) months for each child under its custody within the State of Mississippi.... [DHS's] administrative review shall be completed on each child within the first three (3) months!.]” Miss.Code Ann. § 43-15-13(3). "To carry out these [statutory] duties, DHS has developed formal guidelines and procedures for the provision of social services in the areas of personal protection, prevention of abuse and neglect, and placement of children in out-of-home settings.” S.1V., 974 So.2d at 259 (¶ 12). "This operating procedure is outlined in detail in the DHS’s policy manual.” Id. "At bottom, the manual requires (1) weekly contact during the first month of placement and monthly contact thereafter, whether face-to-face, by telephone calls, or written correspondence. and (2) quarterly face-to-face contact.” Id. at(H15).

. See Gamble ex rel. Gamble v. Dollar Gen. Corp., 852 So.2d 5, 11 (¶ 19) (Miss.2003) ("[E]xpert testimony showing actual harm or proof of physical or mental injury is not always required.").

. The Adams court explained:
It is undisputed that under Mississippi law, a plaintiff asserting a claim for mental anguish, whether as a result of simple negligence or an intentional tort, must always prove that the emotional distress was a reasonably foreseeable result of the defendant's conduct. In cases of intentional infliction of emotional distress, where the defendant’s conduct was "malicious, intentional or outrageous,” the plaintiff need present no further proof of physical injury. Where, as here, the defendant’s conduct amounts to simple negligence, we take this opportunity to clarify that we have moved away from the requirement of proving some physical injury in addition to the proof of reasonable foreseeability. Our language in the previously cited cases, adopting the term "demonstrable harm” in place of "physical injury," indicates that the proof may solely consist of evidence of a mental injury without physical manifestation.
Adams, 744 So.2d at 743 (¶ 21).

. Mississippi Code Annotated section 11-46-15 sets forth the limits for the total award of damages:
(a) For claims or causes of action arising from acts or omissions occurring on or after July 1, 1993, but before July 1, 1997, the sum of Fifty Thousand Dollars ($50,-000.00);
(b) For claims or causes of action arising from acts or omissions occurring on or after July 1, 1997, but before July 1, 2001, the sum of Two Hundred Fifty Thousand Dollars ($250,000.00)[.j

.See Montgomery, 80 So.3d at 800 (¶ 41) (reversing and remanding denial of summary judgment because the trial court did not determine whether the Transportation Commission’s failure to warn of the pothole on the highway was a discretionary function); Lang v. Bay St. Louis/Waveland Sch. Dist., 764 So.2d 1234, 1240-41 (¶29) (Miss.1999) (finding the school district possessed statutory duty to control and discipline students and such duty was ministerial, not discretionary, in suit against school district for negligently failing to properly supervise students and maintain a safe environment).

. See also Smith v. Franklin Custodian Funds, Inc., 726 So.2d 144, 148-49 (¶¶ 17-18) (Miss.1998); Smith v. Sneed, 638 So.2d 1252, 1255-56 (Miss.1994).

. See Miss.Code Ann. § 11-46-15.