This appeal arises from a February 8, 1990, order of the Washington County Circuit Court granting the appellees' motion for summary judgment in a legal malpractice action. The appellants also challenge the circuit court's imposition of attorneys' fees and costs against them as sanctions pursuant to M.R.C.P. 11 and the Mississippi Litigation Accountability Act, Miss. Code Ann. § 11-55-1, et seq. (Supp. 1992). While the evidence in the record clearly presents a case of actionable negligence, we find that the cause of action is time-barred by the applicable statute of limitations, Miss. Code Ann. § 15-1-49
(1972). However, finding nothing to suggest that the Stevens or their attorneys acted in bad faith, by putting forth a claim so devoid of any hope for success, we reverse the Circuit Court's imposition of sanctions.
 I.
Reviewing the facts of Albert Lake's involvement with Leo Stevens' final affairs, we are reminded of Sir Walter Scott's immortal words, "What a tangled web we weave when first we practice to deceive." Marion Stevens and Leo R. "Diddy" Stevens, Jr., brothers and business partners, operated for many years a varied enterprise which included a farm, an oil distributorship, and a service station. Defendant-Appellee, *Page 1179 
J. Albert Lake, a World War II comrade-in-arms with Leo Stevens, served as the brothers' attorney for at least forty years.
In 1979, Leo Stevens, Jr.'s health began to decline. In May, 1979, doctors informed him that he was terminally ill. On the same day that Leo Stevens, Jr. received this grim news, his wife Doris took him to attorney Walter Swain for preparation and execution of a will leaving all assets to her. Apparently perceiving himself to be helplessly subject to his wife's dominating influence, Leo Stevens, Jr. asked Lake at some point in September, 1979, to prepare an inter vivos trust into which he could convey his share of the partnership. The parties differ over whether Lake discussed the trust with Marion Stevens before drafting it. The appellants allege that Marion participated with Leo Stevens, Jr. and Lake in the discussion of what the language of the trust should include. Lake says that he called Marion on the phone before the trust was executed to make sure he was agreeable to the arrangement but maintains that Marion was not a party to the discussions leading up to the drafting of the trust. Lake's brief accepts as fact that Leo Stevens, Jr. and Marion Stevens discussed the proposed trust between themselves before it was drafted. Lake prepared a final draft of the trust on October 2, 1979. The next day, October 3, 1979, Leo Stevens, Jr. went to Lake's office where he executed the trust along with a quitclaim deed transferring all his assets into the trust. Later that same day, Leo Stevens, Jr. informed Marion Stevens and Marion's wife, Rosalie, that he had fixed his affairs in such a way that Doris could not interfere and that Marion would be in charge if anything happened to Leo.
A little over a month later, on November 11, 1979, Leo Stevens, Jr. died. The trust and quitclaim deed had never been recorded. According to Lake, the death was a "complete and utter shock" to him. On November 12, 1979, he recorded the quitclaim deed but not the trust.
On November 13, 1979, Lake invited Marion Stevens and Leo Stevens, III, the decedent's son, to come to his office the next day. On November 14, 1979, Marion Stevens and Leo Stevens, III attended a conference at Lake's office at which Lake presented and discussed the provisions in the trust. According to the appellants and Leo Stevens, III, nothing was said about the failure to record the trust.
On November 15, 1979, Lake wrote a letter to Greenville Production Credit Association, a creditor of the Stevens Brothers Partnership, in which he stated: "In my opinion the trust and the conveyance to the trust will withstand any attack that may be made by Mrs. Stevens or by anyone else."
On November 16, 1979, attorney Walter Swain advised Lake that Doris Stevens had gone to Jackson to consult with another attorney about Leo Stevens, Jr.'s will. Lake conversed by telephone with John Kuykendall, an attorney hired by Doris Stevens, on November 27, 1979. On the sixth day of December, 1979, Lake held a conference with Doris Stevens and her attorneys John Kuykendall and Minor Sumners. Kuykendall asserted the validity of the will in which Leo Stevens, Jr. had bequeathed all his assets to his wife and maintained that since the inter vivos trust was not recorded prior to Leo Stevens, Jr.'s death, the instrument was ineffective. Lake informed Marion Stevens that same day that the trust was void and that the only available means of salvaging the situation was to buy Doris' inherited interest in the partnership. Lake explained to Marion Stevens that Leo Stevens, Jr. had expressly instructed him not to record the trust for the time being, being afraid that his wife would find out about it and force him to revoke it.
On or before April 29, 1980, Lake prepared a quitclaim deed which conveyed to Doris Stevens that portion of the partnership which Leo Stevens, Jr. had attempted to preserve for Marion Stevens by means of the October, 1979, trust and quitclaim deed. The quitclaim deed from Marion Stevens to Doris Stevens recited:
 Whereas, that certain "Stevens Family Trust" and Quitclaim Deed, both of which were dated October 3, 1979, were *Page 1180 
withheld from recordation in the land records of Washington County, Mississippi, by specific direction of the Trustor Leo R. Stevens and, therefore, never took effect.
Marion Stevens executed the quitclaim deed containing the above-quoted language on April 29, 1980. Marion Stevens briefly entered a partnership agreement with Doris Stevens, but in June of 1980, Marion and Rosalie Stevens bought out Doris Stevens' interest. Lake and the law firm to which he belonged continued to represent Marion and Rosalie Stevens until January 22, 1987, at which time the firm severed its relationship with the Stevens since it had started representing one of the Stevens' creditors.
Marion and Rosalie Stevens began to encounter financial difficulties. At some point in 1987, the Stevens contacted Michael Farrell, an attorney who practiced with the firm of Satterfield and Allred, to discuss the possibility of filing bankruptcy. Having already been retained to represent one of the Stevens' creditors, Satterfield and Allred declined to represent the Stevens. Farrell did mention to the Stevens, however, that Lake's failure to record the Stevens Family Trust could possibly involve malpractice. The Stevens were referred to attorney William Howell for representation in their bankruptcy proceedings. Howell listed the contingent malpractice claim against Lake and his firm on the bankruptcy petition, but the bankruptcy trustee declined to pursue the claim.
On October 8, 1988, the Stevens filed a complaint against J. Albert Lake and his law firm, Lake, Tindall, Hunger Thackston, engaging as counsel S. Dennis Joiner, who subsequently associated David Reynolds to assist him in pursuing the action.[1] They alleged that Lake had been negligent and breached his fiduciary trust in connection with the filing or failure to file a trust drawn up on behalf on Marion R. Stevens' brother, Leo R. "Diddy" Stevens, shortly before his death in 1979.
Lake raised a number of affirmative defenses; most notably, that the Stevens' claims were barred by the limitations set forth in Miss. Code Ann. §§ 15-1-35 and 15-1-29, or, in the alternative, by the then six-year limitation period prescribed in Miss. Code Ann. § 15-1-49. He reserved the right therein to later seek sanctions, including but not limited to attorneys' fees, costs and expenses. Lake then filed a motion for summary judgment on April 17, 1989.
A bifurcated hearing on the motions for summary judgment and for fees and costs was held on May 10, 1989, and recessed until November 22, 1989. The Washington County Circuit Court granted Lake's motion for summary judgment on August 8, 1989. In the interim, the Stevens filed an objection to Lake's motion for sanctions, as well as a motion to dismiss the motion for sanctions. The Stevens' motion and objection were denied by the Circuit Court on January 2, 1990. The Circuit Court, however, dismissed with prejudice the motion for sanctions against three attorneys, James H. Herring, Robert W. Long and Andrew Kilpatrick, who had not signed the pleadings.
A final judgment was entered on February 8, 1990, charging the Stevens and their attorneys, S. Dennis Joiner and David Reynolds, with $30,719.00 attorneys' fees and $2,479.14 in expenses, totalling $33,198.14. The Stevens then filed a motion to alter or amend the final judgment so as to sanction only their attorneys, which was overruled by the Washington County Circuit Court. The circuit court also ordered written proffers regarding testimony by Joiner's expert witnesses, H.L. "Sonny" Merideth, Jr. and Professor Aaron Condon, to be excluded from the record. At the November 22, 1989, hearing on the sanctions, counsel for Joiner and the trial judge had agreed that the written proffers would be submitted within ten days of the hearing. However, they were not filed until twenty days after the entry of the final judgment. *Page 1181 
 II.
Legal negligence actions are governed by Miss. Code Ann. §15-1-49 which, at the time the instant suit commenced, prescribed a limitations period of six years. Leo Stevens, Jr. died in 1979; the plaintiffs filed suit in 1988, obviously more than six years later. The defendants raised the statute of limitations as an affirmative defense in their pleadings and successfully moved for summary judgment on that basis. The Stevens maintain on appeal that their suit was timely filed and that the limitations period was tolled due to: (1) Lake's fraudulent concealment of his negligence; (2) Lake's continued representation of the Stevens following Leo Stevens' death; and (3) ongoing injury resulting from Lake's negligence. We are of the opinion, however, that despite Lake's clearly negligent handling of Leo Stevens, Jr.'s affairs, any action against him by the Stevens is barred by the statute of limitations.
 A. Was the limitations statute tolled through fraudulent concealment?
The Stevens first argue that Lake fraudulently concealed their cause of action by falsely asserting that Leo Stevens, Jr. had told him not to record the trust. Miss. Code Ann. § 15-1-67
(1972) provides:
 If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.
In evaluating this argument, we are presented with a two-fold question. First, we look at whether a genuine issue of material fact exists as to whether Lake lied when he told the Stevens that he had refrained from recording the trust at Leo Stevens, Jr.'s request. If a genuine issue of material fact exists on this issue, we must further determine whether the fraud remained undiscoverable by reasonable diligence for such a long time that the date on which the Stevens filed their complaint fell within the tolled limitations period.
The Stevens insist that the appellees failed to show that no genuine issue of material fact existed concerning whether Lake lied about what Leo Stevens, Jr. told him. The appellees retort by arguing that the Stevens have failed to clearly and convincingly show that Lake's representation was false.
According to Haygood v. First Nat. Bank of New Albany,517 So.2d 553 (Miss. 1987), "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." Id. at 555,quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202, 215 (1986). In actions involving fraud, plaintiffs must prove their claims by clear and convincing evidence. Martin v. Winfield, 455 So.2d 762 (Miss. 1984). In reviewing a grant of summary judgment, however, this Court views the evidence in the light most favorable to the non-moving party and gives the non-moving party the benefit of the doubt. See McMullan v. Geosouthern Energy Corp.,556 So.2d 1033, 1036 (Miss. 1990); Sherrod v. United States Fidelity Guaranty Co., 518 So.2d 640, 642 (Miss. 1987); Brown v. CreditCenter, Inc., 444 So.2d 358, 362 (Miss. 1985).
In the case sub judice, the only evidence that Leo Stevens, Jr. did in fact tell Lake not to record the trust pending further instructions is Lake's own affidavit. However, the Stevens' evidence that Leo Stevens, Jr. did not tell Lake to hold the documents until further notice is also meager. They rely primarily on: (1) Lake's attempt to salvage the trust by recording Leo Stevens Jr.'s quitclaim deed on November 12; (2) the fact that Lake did not tell them about the failure to record when he presented the trust to them on November 14, 1979; and (3) Lake's November 15, 1979, letter to a creditor of the Stevens partnership in which he stated that the trust would "withstand any attack." The Stevens infer from these alleged facts that Lake knew that the failure to record the *Page 1182 
trust was due to his own carelessness, not to Leo Stevens, Jr.'s instructions, and that he was seeking to cover up his negligence.
To determine whether § 15-1-67 tolled the limitations period, we must resolve whether the plaintiffs discovered, or reasonably should have discovered, Lake's alleged fraud no earlier than October 22, 1982, six years prior to the date on which the complaint was filed. Most of the facts from which the Stevens draw an inference of fraud were known to them within days or weeks following Leo Stevens, Jr.'s death. For example, they learned of the posthumous recording of the quitclaim deed and the failure to record the trust in December of 1979. They were not aware of the letter in which Lake affirmed the validity of the trust, however, until attorney Joiner began to investigate the case in 1988.
Even assuming arguendo that Lake misrepresented what Leo Stevens, Jr. told him, we find that the Stevens, through the exercise of reasonable diligence, should have been able to discover his negligence prior to 1982. Our review of the record indicates that there is very little that the Stevens allege today that they did not know in December of 1979. Thus, their argument that the statute of limitations was tolled by Lake's fraudulent concealment of his negligent acts is without merit.
 B. Did the continuing attorney-client relationship between Lake and the Stevens toll the running of the limitations period?
The Stevens further argue that as long as an attorney-client relationship existed between themselves and attorney Lake, the statute of limitations could not run. Lake and his firm represented the Stevens until January 22, 1987, so according to the Appellants, the statute of limitations did not begin to run until that date. We reject the analogy drawn by the Appellants between the case sub judice and cases which have held that the Statute of Frauds does not apply as between parties who are bound by a fiduciary relationship. See Neyland v. Neyland,482 So.2d 228, 230 (Miss. 1986); Evanovich v. Hutto, 204 So.2d 477, 479 (Miss. 1967).
The premise of "the continuous representation rule" is that "the cause of action in an attorney malpractice case should not accrue until the attorney's representation concerning aparticular transaction is terminated." 2 Mallen Smith, Legal Malpractice § 18.12 at 115 (3d ed. 1989). The treatise goes on to note that
 [t]he inquiry is not whether an attorney-client relationship still exists but when the representation of the specific matter terminated. . . . Representation on unrelated matters does not suffice [to toll the running of an applicable statute of limitations].
Id. at 119; see also K73 Corp. v. Stancati, 174 Mich. App. 225, 435 N.W.2d 433 (1988) (in legal negligence action against attorney who handled sale of business, limitations statute began to run after completion of representation concerning sale despite attorney's continued representation of plaintiff corporation on other matters); Norfolk Iron v. Larry L. Behnke, P.C.,230 Neb. 414, 432 N.W.2d 18 (1988) (in action against accountant for alleged negligent failure to discover shortage in scrap metal inventory, statute of limitations began to run when audit of scrap metal inventories ended despite continued rendering of services relating to separate audits); Schoenrock v. Tappe,419 N.W.2d 197 (S.D. 1988) (in legal negligence action predicated on erroneous title opinion, court found that doctrine of continuous representation applies only where "professional's involvement after the alleged malpractice is for the performance of the same or related services and is not merely continuity of a general professional relationship.").
The record reveals that attorney Lake last represented the Stevens on matters relating to the failed trust of Leo Stevens, Jr. in June of 1980. Although he continued to represent the Stevens Partnership on other matters until January of 1987, we find that the post-1980 representation did not toll the limitation on actions arising out of Lake's handling of the Stevens Family Trust. *Page 1183 
 C. Are the plaintiffs entitled to recover "continuing damages" for injuries resulting from Lake's alleged negligence but accruing within six years of the date on which suit was filed?
The Stevens contend that the failure of Leo Stevens, Jr.'s trust caused the Stevens partnership to suffer financial detriment throughout the 1980s, culminating ultimately in the 1987 bankruptcy. They take the position that regardless of when their cause of action for Lake's original act of alleged negligence accrued, a new cause of action accrued with each year's financial losses. Recovery should therefore be permitted, the Stevens argue, for all losses occurring during the six years preceding the filing of their complaint.
In so arguing, we find that the Stevens have misconstrued the "continuing injury" doctrine. It is true that continuing or repeated injuries can give rise to liability even if they persist beyond the limitations period for the initial injury. SeeHendrix v. City of Yazoo City, 911 F.2d 1102 (5th Cir. 1990); C.J.S., Limitations of Actions § 177 at 230-32 (1987). This principle applies, however, in situations where the defendant commits repeated acts of wrongful conduct, not where harm reverberates from a single, one-time act or omission:
 [W]here a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from, the date of the last injury, or when the tortious acts cease. Where the tortious act has been completed, or the tortious acts have ceased, the period of limitations will not be extended on the ground of a continuing wrong.
 A "continuing tort" is one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action. A continuing tort sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation.
C.J.S., Limitations of Actions § 177 at 230-31 (emphasis added);see also Hendrix, 911 F.2d at 1102 (where violation occurs outside limitations period but is closely related to violations occurring within the period, recovery is permitted on theory that all violations are part of one continuing act).
The principle of "continuing injury" obviously does not apply to the case sub judice. If attorney Lake injured the plaintiffs, his act of negligence occurred entirely in 1979 and, so far as the record reflects, was never repeated.
 III.
The trial court, finding that the Stevens' complaint asserted a frivolous cause of action, imposed sanctions pursuant to M.R.C.P. Rule 11. The appellants contend that their action is not frivolous and that sanctions were improperly imposed. In Smithv. Malouf, 597 So.2d 1299, 1303 (Miss. 1992), we held that a pleading is frivolous only when the pleader "has no hope of success." Accord Greenville Public School Dist. v. Western LineConsolidated School District, 575 So.2d 956 (Miss. 1990);Tricon Metals Serv., Inc. v. Topp, 537 So.2d 1331, 1336 (Miss. 1989).
The Stevens further contend that the trial court erred in awarding sanctions pursuant to Miss. Code Ann. § 11-55-1, etseq., the Mississippi Litigation Accountability Act of 1988. They argue that since this Court adopted the Mississippi Rules of Civil Procedure in 1981, particularly Rule 11, the statute is void and of no effect. They correctly observe that statutes whichconflict with rules adopted by the Court are void. Hall v.State, 539 So.2d 1338, 1344-1346 (Miss. 1989) (legislature cannot limit rule-making capacity of the Supreme Court); Glennv. Herring, 415 So.2d 695, 696 (Miss. 1982) (this Court will follow legislature's suggestions regarding procedural rules "unless determined to be an impediment to justice or an impingement upon the constitution"); Newell v. State,308 So.2d 71, 76 (Miss. 1975) (inherent power of this Court to promulgate rules of procedure). However, nowhere in their argument do they articulate any points of conflict between Rule 11 and Miss. Code Ann. § 11-55-1, et seq. Likewise, in comparing the *Page 1184 
rule and the statute, we have found no conflicts.
Rule 11(b), which provides for sanctions, reads, in pertinent part, as follows:
 If any party files a motion or pleading which, in the opinion of the court, is frivolous or filed for the purpose of harassment or delay, the court may order such a party, or his attorney, or both, to pay to the opposing party or parties reasonable expenses incurred by such other parties and by their attorneys, including reasonable attorneys' fees.
Similarly, Miss. Code Ann. § 11-55-5 provides as follows:
 (1) Except as otherwise provided in this chapter, in any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorneys fees and costs against any party or attorney if the court, upon the motion of any party or on its own motion, finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct including, but not limited to, abuse of discovery procedures available under the Mississippi Rules of Civil Procedure.
 * * * * * *
 (3) When a court determines reasonable attorney's fees or costs should be assessed, it shall assess the payment against the offending attorneys or parties, or both, and in its discretion may allocate the payment among them, as it determines most just, and may assess the full amount or any portion to any offending party or attorney.
Further, § 11-55-7 augments Rule 11 and § 11-55-5 by stating that the court shall specifically set forth the reasons for awarding attorney fees and costs and enumerates factors which shall be considered by the court.
Given no apparent conflict between the plain language of the statutes and the rule, and the Stevens' failure to identify any alleged conflicts, we find that their argument that the statute is void and of no effect is without merit.
In Moore v. Western Surety Co., 140 F.R.D. 340 (N.D.Miss. 1991), the U.S. District Court for the Northern District of Mississippi found that a client must be personally aware of or otherwise responsible for a bad-faith procedural action in order to be subject to Rule 11 sanctions. The court reversed the imposition of sanctions against a client on grounds that the client had relied strictly on advice of counsel and could not be expected to know whether the complaint was supported by law. Other federal courts have announced similar rulings. See, e.g.,Bakker v. Grutman, 942 F.2d 236 (4th Cir. 1991) (Rule 11 sanctions against plaintiffs were improper where plaintiffs relied on advice of attorneys in filing suit and played no significant role in prosecution of action); Mary Ann Pensiero,Inc. v. Lingle, 847 F.2d 90 (3d Cir. 1988) (sanctions against plaintiff individually were appropriate where several attorneys advised him that he had no valid cause of action but he persevered until finding an attorney who would represent him).
We find nothing in the record to indicate that the Stevens or their attorneys acted in bad faith. Moreover, we do not find that the case set forth by the Stevens' attorneys was so without any hope for success as to render it frivolous.
As we stated in Tricon Metals Services, Inc. v. Topp,537 So.2d 1331 (Miss. 1989), "the claim must not only be without merit, it must be frivolous." Id. at 1335. Furthermore, "a pleading or motion is frivolous within the meaning of Rule 11 only when, objectively speaking, the pleader or movant has no hope of success." Id. In Nichols v. Munn, 565 So.2d 1132
(Miss. 1990), which we described as "what appears to be a light-headed lawsuit," we found that while weak, it was "hardly so devoid of any claim of liability as to be frivolous." Id. at 1137. *Page 1185 
In the case sub judice, we have no question about the merits of the Stevens' claim against Lake. In Tricon, we found that where a defendant has a complete defense to a plaintiff's claim, such as when the action is clearly barred by the statute of limitations, the plaintiff has no hope of success. Id. at 1336. Despite our affirmance of the summary judgment motion against the Stevens, it cannot be said that the Stevens' claim, despite the weakness of their arguments, was clearly barred by the applicable statute of limitations.
Accordingly, finding that the trial court erred in imposing sanctions, we reverse and render on this issue.
 IV.
At the November 22, 1989, hearing on the motion for sanctions, Joiner's attorney sought to call Professor Aaron Condon and H.L. "Sonny" Merideth as expert witnesses. The Circuit Court sustained Lake's objections, stating:
 Let the record show that previous to this in chambers, in which a record was not made, Mr. Liston on behalf of Mr. Joiner informed the Court that he intended to offer two experts as practicing lawyers to testify that Mr. Joiner acted reasonably, or words to that effect, in assessing this case and the Court ruled that in its opinion Canon 3 of the Code of Judicial Conduct would make this improper in that I could see no difference in hearing their testimony that my going to a lawyer's office after this proceeding was over and asking that lawyer's opinion of the case.
 And for that reason, the motion of Mr. Lake was granted, denying the testimony of the two expert witnesses.
Joiner's objections to Lake's proposed expert witness likewise were sustained.
Mississippi Rules of Evidence 702 affords trial judges a certain degree of discretion in allowing expert testimony.Fowler v. State, 566 So.2d 1194, 1200 (Miss. 1990); Vickery v.State, 535 So.2d 1371, 1379-80 (Miss. 1988). In cases involving legal malpractice, this Court has held that "[t]he generally accepted rule is that expert testimony is ordinarily necessary to support an action for malpractice of a professional man in those situations where special skills, knowledge, experience, learning or the like are required." Dean v. Conn, 419 So.2d 148, 150 (Miss. 1982). In Dean, a legal malpractice case involving the preparation of a real property certificate of title, the plaintiff called a member of the bar in the county where plaintiff practiced to testify regarding "the standard of care exercised by attorneys in that area when determining the heirs at law of a person who died intestate and whose name appears in a chain of title to real property." Id. at 151. Joiner asserts that Professor Condon and Mr. Merideth were to testify regarding "the reasonableness of his conduct and that his conduct was within the standards of professional conduct applicable to attorneys." Although the case sub judice involved a question of whether a statute of limitations had been tolled, it is otherwise indistinguishable from Dean and the Circuit Court erred in not allowing testimony about the reasonableness of Joiner's actions in pursuing this suit.
The Circuit Court's reliance on Canon 3(A)(4) of the Code of Judicial Conduct was misplaced. Canon 3(A)(4) reads as follows:
 A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.
The prohibition in Canon 3 is against ex parte communications, which were not at issue in this case. Further, it was not the judge who sought the "advice of a disinterested expert," but rather, the parties who sought to introduce the testimony of experts.
As the issue is framed on appeal, the Stevens further complain that the Circuit Court erred in not accepting their proffer of what Condon and Merideth would have testified. However, they totally neglect *Page 1186 
to address this part of the issue in their brief. As we stated inR.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1023 (Miss. 1990), a complaining party has "an affirmative duty to specifically address the issue and provide authoritative support for its position." When the party has failed to do so, this Court is under no obligation to consider the issue. Id. Nevertheless, we note that there is no evidence in the record to support the Stevens' position. At the hearing, the trial judge and Joiner's attorney agreed that a written proffer could be submitted to the court within ten days after the November 22 hearing. No written proffer was submitted during the specified time period. Instead, they were submitted twenty days after the final judgment was rendered on February 8, 1990, some eighty-eight days after the agreed upon submission date. Accordingly, we do not find the Circuit Court in error for refusing proffers so tardily filed.
 V.
There is evidence to suggest that Albert Lake handled Leo Stevens, Jr.'s final affairs in a negligent manner. Our holding today that the Stevens' malpractice suit against him is barred by the statute of limitations should not be construed as condoning his actions. However, while we affirm the Washington County Circuit Court's order granting Lake's motion for summary judgment, we reverse and render the imposition of sanctions against the Stevens and their attorneys, finding no evidence that they either acted in bad faith or pursued a totally frivolous claim.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS and ROBERTS, JJ., concur.
SMITH, J., not participating according to Supreme Court Internal Rules.
[1] In February, 1989, Andrew Kirkpatrick, former General Counsel for the Mississippi State Bar Association, joined the Reynolds firm and assisted in the case.