# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-01710-SCT

*BILLY RAY BRADLEY*

*v.*

*EARL P. (PAT) JORDAN, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/12/2014 |
| TRIAL JUDGE: | HON. LESTER F. WILLIAMSON, JR. |
| TRIAL COURT ATTORNEYS: | DONALD W. BOYKIN |
| | CHRISTOPHER MICHAEL FALGOUT |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DONALD W. BOYKIN |
| ATTORNEY FOR APPELLEE: | CHRISTOPHER MICHAEL FALGOUT |
| NATURE OF THE CASE: | CIVIL - LEGAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 01/21/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Billy Ray Bradley waited until 2014 to file suit against his court-appointed counsel in a 2004 proceeding. Bradley alleges negligence against his representative, Earl Jordan, which resulted in his injury, i.e., wrongful incarceration. Jordan filed a motion for summary judgment, alleging that the statute of limitations had run on any claims Bradley may have had as to Jordan's negligence or professional malpractice. The trial court entered judgment in Jordan's favor, finding that Bradley's claims were barred by the statute of limitations. Bradley timely appealed. Finding that Bradley's claims are time-barred, we affirm the judgment of the trial court.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶2.     On November 19, 2003, Bradley was indicted as a habitual offender pursuant to Mississippi Code Section 99-19-83,[1] on the charge of possession of a firearm by a convicted felon in violation of Mississippi Code Section 97-37-5 (2000). *Bradley v. State*, 934 So. 2d 1018, 1022 (Miss. Ct. App. 2005) ("*Bradley I*"). Jordan was appointed counsel for Bradley. Bradley "informed Jordan he had not served a year on one of the sentences referenced in the indictment."[2] However, Bradley was convicted and was sentenced on June 15, 2004, to a term of life imprisonment, to be served in the custody of the Mississippi Department of Corrections (MDOC). *Id.*

¶3.     On February 5, 2014, this Court granted Bradley leave to seek post-conviction relief (PCR) in the Circuit Court of Lauderdale County on the issue of whether he had served one year or more for a burglary conviction which was used to support the State's allegation that Bradley was a habitual offender, such that he could be sentenced to life imprisonment. The trial court entered an order vacating Bradley's sentence on April 30, 2014, finding that

---

[1] This section requires the State to prove that Bradley had two previous felony convictions for which he had been sentenced to serve and had served one year or more for each conviction. *See* Miss. Code Ann. § 99-19-83 (Rev. 2015).

[2] In his Motion for Post-Conviction Relief, Bradley alleged that he had served only seventy-one days and that documents were available at the time of his trial and sentencing from the Jackson County Circuit Clerk and the Jackson County Sheriff's Department showing he had served only seventy-one days.  He argued that his trial counsel "failed to investigate that matter after Bradley requested him to do so, and failed to raise a defense at Bradley's sentencing hearing."

2

Bradley had not served at least one year on his burglary conviction, and ordered his immediate release from MDOC custody.

¶4. On June 9, 2014, Bradley filed his complaint against Jordan, alleging that Jordan had been negligent in his representation of Bradley by failing to investigate whether Bradley had served one year or more on the two sentences used to support Bradley's habitual-offender status and in failing to raise this defense at his sentencing hearing.

¶5. Jordan filed a motion for summary judgment, alleging that Bradley's suit was time-barred based on Bradley's discovery of Jordan's alleged negligence, which occurred more than three years prior to Bradley's filing suit. Jordan averred that Bradley specifically alleged in his complaint that "[p]rior to Bradley being sentenced he informed Jordan that he had not served a year on one of the sentences referenced in the indictment."

¶6. Based on Bradley's own allegations in his complaint and his two suits alleging ineffective assistance of counsel, Bradley had three years from the date he knew of his attorney's negligence to file suit. Because Bradley did not file this suit until June 9, 2014. Bradley's suit was time-barred.

¶7. In response, Bradley argued that the statute of limitations could not have begun to run until his request for PCR was granted and his sentence was vacated.

¶8. After hearing argument on the motion, the trial court determined that Bradley's claims were barred by the statute of limitations and entered a judgment dismissing Jordan. Bradley timely appealed, arguing that the statute of limitations had not run on his complaint.

3

## ANALYSIS

¶9. This Court applies a *de novo* standard of review to questions regarding the statute of limitations. ***Harris v. Darby***, 17 So. 3d 1076, 1078 (Miss. 2009). This Court also applies a *de novo* standard of review for grants of summary judgment. ***Id.*** The three-year statute of limitations found in Mississippi Code Section 15-1-49 applies to actions for legal malpractice. ***Bennett v. Hill-Boren, P.C.***, 52 So. 3d 364, 369 (Miss. 2011) (citing ***Channel v. Loyacono***, 954 So. 2d 415, 420 (Miss. 2007)). In ***Smith v. Sneed***, 638 So. 2d 1252 (Miss. 1994), this Court adopted the discovery rule for legal malpractice actions, holding that the statute of limitations would begin to run at the time the client discovered or through the use of reasonable diligence should have discovered his counsel's negligence. ***Smith***, 638 So. 2d at 1258.

¶10. Bradley admits that, at the time of his sentencing, on June 15, 2004, he not only knew that he had not served a full year on one of his convictions, but he had informed Jordan of this fact. In his direct appeal and in a federal suit, Bradley argued that Jordan was ineffective because he had failed to verify that Bradley was incarcerated for more than one year on one of his prior convictions. ***Bradley I***, 934 So. 2d at 1026; ***Bradley II***, 2006 WL 2805218, at *1. Bradley consistently has alleged that Jordan failed to investigate Bradley's claim that he had not served one year for one of his convictions by obtaining public records which were readily available and that Jordan failed to raise this as a defense at his sentencing hearing. Bradley

should have filed his suit for negligence on or before June 15, 2007. Therefore, we find that Bradley's claims are time-barred.

¶11.     Bradley also argues that this Court should apply the ruling in ***Heck v. Humphrey***, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), and find that the statute of limitations does not begin to run in criminal legal malpractice cases until post-conviction relief has been granted. Heck alleged that the defendants had violated his constitutional rights by deliberately destroying exculpatory evidence in order to convict him. ***Id.*** at 484. The Supreme Court held that, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [Section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . ." ***Heck***, 512 U.S. at 486-87.

¶12.     The Court of Appeals addressed this very issue in ***Hymes v. McIlwain***, 856 So. 2d 416 (Miss. Ct. App. 2003), and this Court adopts the holding in that case. Hymes, like Bradley, argued that ***Heck*** required a "finding that the statute of limitation[s] did not begin to run on his claims until his petition for post-conviction relief was granted in May 2000." ***Hymes***, 856 So. 2d at 418. The Court of Appeals disagreed, finding that the case was not a Section 1983 case, nor was it a malicious prosecution case, as was presented in ***Heck***. ***Hymes***, 856 So. 2d at 418.

5

Controlling authority in the present suit is not **Heck** but standard legal malpractice jurisprudence. The period of limitation in such a suit begins to run as of the date the client learns, or through reasonable diligence should have learned of his counsel's negligence. **Smith v. Sneed**, 638 So. 2d 1252, 1253 (Miss. 1994). This was the ground upon which the trial court found the suit untimely. Hymes was not required by the operative cause of action for professional malpractice to prove that the effects of his counsel's alleged negligence had been finally set aside. The limitation period was therefore not awaiting final resolution of the criminal matter before it would begin.

Hymes had reason to know his attorneys acted negligently for quite some time before filing suit against them. Ineffective assistance of counsel was the basis for vacating the sentence. The petition for post-conviction relief was filed in 1995, although it was not ultimately successful until 2000. At the very latest, the statute of limitations began to run in 1995 when it became apparent Hymes knew of his attorneys' deficient performance. The filing of this civil suit comes too late.

**Hymes**, 856 So. 2d at 419.

¶13. This case is analogous to **Hymes**. Bradley had reason to know his attorney had acted negligently when he was sentenced as a habitual offender, although he had not served a year in prison for one of his convictions. As previously stated, Bradley admitted in his Complaint that, at the time of his sentencing, on June 15, 2004, he informed his court-appointed attorney that he had not served a full year on one of his convictions. Based on Bradley's own admissions, the statute of limitations began to run from the date of his sentencing hearing, June 15, 2004. As such, this suit is time-barred.

### CONCLUSION

¶14. Bradley's suit is time-barred by the applicable statute of limitations. Therefore, we affirm the judgment of the Circuit Court of Lauderdale County.

¶15.   **AFFIRMED.**

**DICKINSON, P.J., LAMAR, PIERCE AND COLEMAN, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND KING, J. MAXWELL, J., NOT PARTICIPATING.**

**KITCHENS, JUSTICE, DISSENTING:**

¶16.   The majority affirms the judgment of the Lauderdale County Circuit Court granting summary judgment to Earl Jordan. Because a genuine issue of material fact exists regarding the point at which Billy Ray Bradley discovered, or by reasonable diligence should have discovered, his counsel's negligence, I respectfully dissent.

¶17.   The majority correctly applies *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), and *Hymes v. McIlwain*, 856 So. 2d 416 (Miss. Ct. App. 2003). In *Heck*, the United States Supreme Court, answering the question "whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983," analogized Section 1983 claims to common-law malicious prosecution claims, because both "permit[] damages for confinement imposed pursuant to legal process." *Heck*, 512 U.S. at 478, 484. The Supreme Court held that "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 487-88.

¶18.   In *Hymes*, the Mississippi Court of Appeals rejected Hymes's argument that his legal malpractice claim against his lawyer was "not time-barred as the statute of limitation on such

claim did not begin to run until his conviction was vacated." ***Hymes***, 856 So. 2d at 418. In 1991, Hymes was sentenced to thirty-five years in prison after having been convicted of possession of marijuana with intent to sell and possession of a firearm by a convicted felon. ***Id.*** at 417. Hymes sought post-conviction relief on the basis of ineffective assistance of counsel in 1995. ***Id.*** Post-conviction relief was "eventually granted and Hymes'[s] conviction was vacated in May 2000." ***Id.*** Hymes then filed a legal malpractice lawsuit against "the three attorneys who represented him in the 1991 criminal trial," but the attorneys' motion for summary judgment was granted on the basis that "the suit was time-barred by the expiration of the three-year statute of limitations." ***Id.*** at 418.

¶19.    The Court of Appeals noted Hymes's reliance on ***Heck***: "the ***Heck*** [C]ourt held that a section 1983 claim which has the effect of casting aspersions upon the legality of either conviction or confinement if successful is not cognizable until the conviction upon which the claim is based has been legally voided." ***Id.*** (citing ***Heck***, 512 U.S. at 486-87). According to the Court of Appeals, "Hymes urges that ***Heck*** requires a finding that the statute of limitations did not begin to run on his claims until his petition for post-conviction relief was granted in May 2000." ***Id.*** The Court of Appeals opined that, "[t]he problem with analogizing ***Heck*** to the present litigation is that this is neither a section 1983 action against governmental actors nor is it akin to a malicious prosecution suit." ***Id.*** "All that ***Heck*** provides relevant here is that were this a suit akin to malicious prosecution against State actors, the setting aside of

8

the underlying conviction would be a prerequisite for the bringing of a damage suit." ***Id.*** at 419.

¶20.     As in ***Hymes***, Bradley relies on ***Heck*** to argue that the statute of limitations on a legal malpractice claim does not begin to run until such time as the "conviction upon which the claim is based has been legally voided." ***Hymes***, 856 So. 2d at 418 (citing ***Heck***, 512 U.S. at 486-87). I agree with the majority that "[t]his case is analogous to ***Hymes***" and that ***Heck*** does not stand for the proposition that the statute of limitations on a legal malpractice claim runs when the plaintiff's conviction is overturned. Maj. Op. ¶ 13. But I disagree with the majority's finding that summary judgment properly was granted in this case, and with the majority's pronouncement that "Bradley had reason to know his attorney had acted negligently when he was sentenced as a habitual offender, although he had not served a year in prison for one of his convictions," and, therefore, "the statute of limitations began to run from the date of the sentencing hearing, June 15, 2004." Maj. Op. ¶ 13.

¶21.     Mississippi Rule of Civil Procedure 56(c) provides, in pertinent part, that:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

M.R.C.P. 56(c).

¶22.     This Court considered a case in which Albert Ray Smith sued his court-appointed lawyer for legal malpractice, claiming that his lawyer had been "negligent in failing to obtain a copy of the victim's autopsy report before advising him to enter a guilty plea to the charge

9

of manslaughter." ***Smith v. Sneed***, 638 So. 2d 1252, 1253 (Miss. 1994). Smith, having been indicted for murder, pled guilty to manslaughter on July 10, 1979. ***Id.*** The lawyer had requested an autopsy report but was informed that "no autopsy report was in the file and that the district attorney's office did not know anything about an autopsy report." ***Id.*** "Despite lacking a copy of the autopsy, Sneed advised Smith to plead guilty to the reduced charge of manslaughter which he did in fact do . . . ." ***Id.*** Smith was sentenced to twenty years' imprisonment. ***Id.***

¶23.    On August 1, 1980, Smith had a conversation with Constable Bobby King of Pontotoc County in which King informed him that the widow of the victim "hoped Smith would be moved to Parchman before he discovered the results of the . . . autopsy report." ***Id.*** Through new counsel, on January 12, 1982, Smith obtained a copy of the autopsy report, which "revealed that the victim . . . had died of natural causes and not necessarily from the gunshot wounds allegedly inflicted by Smith . . . ." ***Id.*** at 1254. Smith's September 8, 1982, Petition for Writ of Error *Coram Nobis* was granted on October 26, 1982, and a new trial was ordered. ***Id.*** Smith, on November 8, 1982, was released from prison and executed a release against "all claims and causes of action against all defense counsel (including Sneed), all state's attorneys, all law enforcement officers and all prosecuting witnesses in consideration for a dismissal of the manslaughter charge against him." ***Id.***

¶24.    Smith filed suit against his first court-appointed lawyer on June 1, 1988, "alleging that Sneed was negligent in advising him to plead guilty to manslaughter before obtaining a copy

of the victim's autopsy report." *Id.* The Circuit Court of Pontotoc County entered summary judgment in favor of Sneed, finding that the statute of limitations had begun running at the time of Smith's guilty plea in 1979. *Id.* At the time, a six-year statute of limitations was in effect for legal malpractice actions. *Id.* (citing *Steven v. Lake*, 615 So. 2d 1177, 1181 (Miss. 1993)). Smith appealed, claiming that the limitations period began to run the date he was released from prison, November 8, 1982, or, at the earliest, on June 1, 1982, the date on which he obtained a copy of the exculpatory autopsy report. *Id.* Sneed claimed that the limitations period commenced on the date Smith pled guilty to manslaughter, July 10, 1979, or on July 13, 1979, the date on which Smith was sentenced. *Id.* At the latest, argued Sneed, the limitations period began to run when Smith was informed of the existence of a potentially exculpatory autopsy report, on August 1, 1980. *Id.*

¶25.    As the majority recognizes, we held that "the statute of limitations in a legal malpractice action properly begins to run on the date the client learns or through the exercise of reasonable diligence should learn of the negligence of his lawyer." *Id.* at 1253. This Court, however, reversed and remanded the grant of summary judgment, holding that "[q]uestions of material fact exist related to the application of this standard." *Id.* Specifically, this Court held that "whether King, a layman, recounted the contents of the autopsy report in a manner sufficient to put Smith on notice that his attorney had been negligent was a fact question for jury determination." *Id.* at 1258. As a result, "the grant of summary judgment was premature." *Id.*

¶26. In the present case, Bradley was found guilty on June 15, 2004, by a Lauderdale County jury of possession of a firearm by a felon, and was sentenced that same day to life imprisonment pursuant to Mississippi Code Section 99-19-83 (2000). Bradley argued on direct appeal,[3] *inter alia*, that "an investigation of the bed registers of the MDOC would prove that he did not serve a year in MDOC custody as a result of his 1980 burglary conviction." ***Bradley v. State*** (***Bradley I***), 934 So. 2d 1018, 1026 (Miss. Ct. App. 2005). The Court of Appeals, in its opinion of December 13, 2005, held that Bradley's argument was unsupported by the record: "These allegations against his attorney are unsupported by evidence, affidavits, or witnesses, and, therefore, are insufficient to sustain his claim for ineffective assistance of counsel." ***Id.*** (citing ***Harris v. State***, 822 So. 2d 1129, 1132 (Miss. Ct. App. 2002)).

¶27. Bradley further argued on direct appeal that "his sentence was improper because he was actually ineligible to receive a life sentence" under Mississippi Code Section 99-19-83 (2000), "which provides that any person who has been convicted of a felony who has twice previously been convicted of any felony and sentenced to and served a term of one year or more shall be sentenced to life imprisonment if one of the previous felonies was a crime of violence." ***Bradley I***, 934 So. 2d at 1028. The Court of Appeals rejected Bradley's claim:

> Bradley's argument that he was ineligible is incorrect. The record reflects that prior to the conviction sub judice, Bradley was convicted of two felonies, one

---

[3] Bradley was represented on direct appeal by the Office of Indigent Appeals. ***Bradley v. State***, 934 So. 2d 1018, 1021 (Miss. Ct. App. 2005).

of which was aggravated assault. The record also reflects that Bradley was sentenced to serve more than one year for each felony, and that Bradley served more than one year for each felony.

*Id.*

¶28.     Bradley then filed a complaint against Jordan pursuant to 42 U.S.C. § 1983 in the United States District Court for the Southern District of Mississippi, Eastern Division. According to that court's judgment of September 25, 2006, Bradley had claimed, *inter alia*, that "he was denied effective assistance of counsel by public defender Jordan's poor representation during his trial" and that records provided by an MDOC official "led to his status as a 'habitual offender' for sentencing purposes." Further, Bradley requested that "his life sentence as a habitual offender be 'reversed and remanded' for sentencing 'as a non-habitual criminal.'" The district court held that Bradley's "claim for release from custody is habeas in nature and, thus, not properly pursued under 42 U.S.C. § 1983." Further, the district court ruled that Bradley's claims for monetary damages were barred because "[t]he plaintiff has failed to demonstrate that his conviction and/or sentence has been invalidated in order to overcome the bar to this suit established by ***Heck v. Humphrey***[, 512 U.S. 512 (1994)]."

¶29.     Bradley filed a Motion for Post-Conviction Relief on February 12, 2014, arguing ineffective assistance of trial and appellate counsel:

> Most importantly, for one of the felonies serving as the basis for his habitual offender indictment under Sec. 99-19-83 (1980 Jackson County, Mississippi conviction), Bradley served only seventy-one (71) days . . . , not the requisite one year or more. His trial counsel failed to investigate that matter after

13

> Bradley requested him [to] do so, and failed to raise a defense at Bradley's sentencing hearing. Documents were available at the time of Bradley's trial from the Jackson County Circuit Clerk and Jackson County Sheriff showing that Bradley had in fact served only seventy-one (71) days on the 1980 conviction, having posted an appeal bond after his conviction. Bradley was never incarcerated on that conviction after he posted bond. . . .

On February 6, 2014, a panel of this Court granted Bradley leave to seek post-conviction relief in the Circuit Court of Lauderdale County on the issue of whether Bradley had served one year or more for the 1980 Jackson County burglary conviction. According to Bradley's complaint in the present legal malpractice case, "[o]n April 30, 2014[,] the Lauderdale County Circuit Court entered its Order Vacating Sentence by which Bradley's aforesaid life sentence was vacated." Bradley since has been released from prison.

¶30.    As in *Smith*, "[q]uestions of material fact exist" relating to whether Bradley knew "or through the exercise of reasonable diligence should [have known] of the negligence of his lawyer" as of the date of sentencing, June 15, 2004. *Smith*, 638 So. 2d at 1253. In *Smith*, whether the constable, a lay person, adequately had informed Smith regarding the contents of the exculpatory autopsy report "in a manner sufficient to put Smith on notice that his attorney had been negligent was a fact question for jury determination." *Id.* at 1258. Here, a jury question exists regarding whether Bradley, a lay criminal defendant, knew or through the exercise of reasonable diligence should have known of his lawyer's negligence in failing to investigate the underlying crimes used by the State to support Bradley's status as an habitual offender.

¶31. Both the Mississippi Court of Appeals and the United States District Court for the Southern District of Mississippi rejected Bradley's claims. It was not until February 6, 2015, that this Court granted leave to Bradley to pursue his post-conviction claims, and it was not until April 30, 2014, that his sentence was vacated. While I agree with the majority that no bright-line rule exists that the statute of limitations does not begin to run until a conviction has been overturned, as in *Smith*, a jury ought to decide the fact question of the point at which lay criminal defendants knew or should by reasonable diligence have known of their lawyers' negligence. In deciding *Smith*, this Court quoted a Texas commentator: "'[i]t is unrealistic to expect a layman to perceive an injury at the time of the negligent act or omission of his attorney.'" *Smith*, 638 So. 2d at 1257 (quoting *Willis v. Maverick*, 760 S.W. 2d 642, 645 (Tex. 1988) (quoting Ward, *Legal Malpractice in Texas*, 19 S. Tex. L.J. 587, 613 (1978))).

¶32. A genuine issue of material fact exists regarding the point at which Billy Ray Bradley discovered, or by reasonable diligence should have discovered, his counsel's negligence. Because I would reverse the grant of summary judgment to Jordan by the Lauderdale County Circuit Court, I respectfully dissent.

**WALLER, C.J., AND KING, J., JOIN THIS OPINION.**