KITCHENS, Justice,
dissenting:
¶ 16. The majority affirms the judgment of the Lauderdale County Circuit Court granting summary judgment to Earl Jordan. Because a genuine issue of material' fact exists regarding the point at which Billy Ray Bradley discovered," or by reasonable diligence should have discovered, his counsel’s negligence, I respectfully dissent.
¶ 17. The majority correctly applies Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and Hymes v. McIlwain, 856 So.2d 416 (Miss.Ct.App.2003). In Heck, the United States Supreme Court, answering the question “whether a state prisoner may challenge the .constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983,” analogized Section 1983 claims to common-law malicious prosecution claims, because both “permit[] damages for confinement imposed pursuant to legal process.” Heck, 512 U.S. at 478, 484, 114 S.Ct. 2364. The Supreme Court held that “a § 1983 plaintiff must prove, that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court’s issuance of a writ of habeas corpus.” Id. at 487-88.
¶ 18. In Hymes, the Mississippi Court of Appeals rejected Hymes’s argument that his legal malpractice claim against his lawyer was “not time-barred as the statute of limitation on such claim did not begin to run until his .conviction was vacated.” Hymes, 856 So.2d at 418. In 1991, Hymes was sentenced to thirty-five years in prison after having been convicted of possession of marijuana with intent to sell and possession- of a firearm by a convicted felon. Id. at 417. Hymes sought post-conviction relief on the basis of ineffective assistance of counsel in 1995. Id. Post-conviction relief was “eventually granted and Hymes’[s] conviction was vacated in May 2000.” Id. Hymes then filed a legal malpractice lawsuit against “the three attorneys who represented him in the 1991 criminal trial,” but the attorneys’ motion for summary judgment was granted on the basis that “the suit was time-barred by the expiration of the three-year statute of limitations.”' Id. at 418.
*443 ¶ 19. The Court of Appeals noted Hymes’s reliance on Heck: “the Heck [C]ourt held that a section 1983 claim which has the effect of casting aspersions upon the legality of either conviction or confinement if successful is not cognizable until the conviction upon which the claim is based has been legally voided.” Id. (citing Heck, 512 U.S. at 486-87, 114 S.Ct. 2364). According to the Court of Appeals, “Hymes urges that Heck requires a finding that the statute of limitations did ,'not begin to run on his claims-until his petition -for post-conviction relief was granted in May 2000.” Id. The Court of Appeals opined that, “[t]he problem with analogizing Heck to the present litigation is that this is neither a section 1983 action agairifet governmental actors nor is it akin to a malicious prosecution-suit.” Id. “All that Heck provides relevant here is that were this a suit akin to malicious prosecution against State actors, the setting aside of the underlying conviction would be a prerequisite for the bringing of a damage suit.” Id. at 419.
¶20. As in Hymes, Bradley relies on Heck to argue that the statute1 of limitations on a legal malpractice claim does not begin to run until such time as the “conviction upon which the claim is based has been legally voided.” Hymes, 856 So.2d at 418 (citing Heck, 512 U.S. at 486-87, 114 S.Ct. 2364). I agree with the majority that “[tjhis case is analogous to Hymes ” and that Heck does not stand for the proposition that the statute- of1 limitations on a legal malpractice claim runs when the plaintiffs conviction is overturned.- Maj. Op. ¶ 13. But I disagree with the majority’s finding that summary judgment properly was granted in this case, and with the majority’s pronouncement that .“Bradley had reason to know his attorney had acted negligently when he was sentenced as a habitual offender, although he had not served a year in prison for one of his convictions,” and, therefore, “the statute of limitations began to run from the date of the sentencing hearing, June 15, 2004.” Maj. Op. ¶ 13.
If 21. .Mississippi Rule of Civil Procedure 56(e) provides, in pertinent part, that:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
M.R.C.P. 56(c).
¶22. This Court considered a case in which Albert Ray Smith sued his court-appointed lawyer' for legal malpractice, claiming that his lawyer had been “negligent in failing to obtain, a copy of the victim’s autopsy report before advising him to enter a guilty plea to the charge of manslaughter.” Smith v. Sneed, 638 So.2d 1252, 1253 (Miss.1994). Smith', having been , indicted "for murder, pled' guilty to manslaughter on July 10, 1979. Id. The lawyef had requested an autopsy report but was informed that “no autopsy report was in the file and that the district attorney’s‘office did not know añything 'about an autopsy report.” Id. “Despite lacking a copy of the autopsy, Sneed advised Smith to plead guilty to the reduced charge of manslaughter which he did in fact do .... ” Id. Smith was sentenced to twenty yéars’ imprisonment. Id.
¶ 23. On August 1, 1980, Smith had a conversation with Constable Bobby King of Pontotoc County in which King informed him that the .widow of the victim “hoped Smith would be moved to Parch-man before he discovered the. results of the ... autopsy report.” Id. Through new counsel, on January 12, 1982, Smith obtained a copy of the autopsy report, which *444 “revealed that the victim ... had died of natural causes and not necessarily from the gunshot -wounds allegedly inflicted by Smith_” Id. at 1254. Smith’s September 8, 1982, Petition for Writ, of Error Coram Nobis was granted on October 26, 1982, and a new trial was ordered. Id. Smith, on November 8, 1982, was released from prison and executed a release against “all claims and causes of action against all defense counsel (including Sneed), all state’s attorneys, all law enforcement officers and all prosecuting witnesses in consideration for a dismissal of the manslaughter charge against him.” Id.
¶24. Smith filed suit against his first court-appointed lawyer on June 1, 1988, “alleging that Sneed was negligent in advising him to plead guilty to manslaughter before obtaining a copy of the victim’s autopsy report.” Id. The Circuit Court of Pontotoc County entered, summary judgment in favor of Sneed, finding that the statute of limitations had begun running at the .time of .Smith’s guilty plea in 1979. Id. At the time, a six-year statute of limitations was in effect for legal malpractice actions. Id. (citing Stevens v. Lake, 615 So.2d 1177, 1181 (Miss.1993)). Smith appealed, claiming that the limitations period began to run the date he was released from prison, November 8, 1982, or, at the earliest,, on June 1, 1982, the date pn which he obtained a copy of the exculpatory autopsy report. Id. Sneed claimed that the limitations period commenced on the date Smith pled guilty to manslaughter, July 10, 1979, or on July 13, 1979, the date on which Smith was sentenced. Id: At the latest, argued Sneed, the limitations period began to run when Smith was informed of the existence of a potentially exculpatory autopsy report, on August 1, 1980. Id.
¶25. As. the majority recognizes, we held, that “the statute of limitations in a legal malpractice action properly begins to run on the date the client learns or through the exercise of reasonable diligence should learn of the negligence of his lawyer.” Id. at 1253. ■ This Court, however, reversed and remanded the grant of summary judgment, holding that “[questions of material fact exist related to the application of this standard.” Id. Specifically, this Court held that “whether King, a .layman, recounted the contents of the autopsy report- in a manner sufficient to put Smith on notice.that his attorney had been negligent was a fact question for jury .determination.” Id. at 1258. As a result, “the grant of summary judgment was premature,” Id. ,
¶ 26. In the present case, Bradley was found guilty on June 15, 2004, by a Laud-erdale County jury of possession of a firearm by a felon, and was sentenced that same day to life imprisonment pursuant to Mississippi Code Section 99-19-83 (2000). Bradley argued on direct appeal,[3] inter alia, that “an investigation of the bed registers of the MDOC would prove that he did not serve a year in MDOC custody as a result of his 1980 burglary conviction.” Bradley v. State (Bradley I), 934 So.2d 1018, 1026 (Miss.Ct.App.2005). The Court of Appeals, in its opinion of December 13, 2005, held that Bradley’s argument was unsupported by the record: “These allegations against his attorney are unsupported by evidence, affidavits, or witnesses,'and, therefore, are insufficient to sustain his claim for ineffective assistance of counsel.” Id. (citing Harris v. State, 822 So.2d 1129, 1132 (Miss.Ct.App.2002)).
¶ 27. Bradley further argued on direct appeal that “his sentence was improper because he was actually ineligible to re *445 ceive. a life -sentence” under Mississippi Code Section 99-19-88 (2000), “which provides that any person who has been convicted of a felony who has twice previously been convicted of any felony and sentenced to and served a term of one year or more shall be sentenced to life imprisonment if one of the previous felonies was a crime of violence.” Bradley I, 934 So.2d at 1028. The Court of Appeals rejected Bradley’s claim:
Bradley’s argument that he was ineligible is incorrect. The record reflects that prior to the conviction sub judice, Bradley was convicted of two felonies, one of which was aggravated assault. The record also reflects that Bradley was sentenced to serve more than one year for each felony, and that Bradley served more than one year for each felony.

Id.

¶28. Bradley then filed a complaint against Jordan pursuant to 42 U.S.C. § 1983 in the United States District Court for the Southern District of Mississippi, Eastern Division. _ According to that court’s judgment of September 25, 2006, Bradley had claimed, inter alia, ■ that “he was denied effective assistance of Counsel by public defender Jordan’s poor representation during his trial” and that records provided by an MDOC official “led to his status as a ‘habitual offender’ for sentencing purposes.” Further, Bradley requested that “his life 'sentence as a habitual offender be-‘reversed and remanded’ for sentencing ‘as-a non-habitual criminal.’” The district court held that Bradley’s “claim for release from custody is habeas in nature and, thus, not properly pursued under 42 U.S.C. § 1983.” Further, the district court ruled that Bradley’s claims for monetary damages were barred because “[t]he plaintiff has failed to demonstrate that his conviction and/or sentence has been invalidated,in order to overcome the bar to this .suifc. established by Heck v. Humphrey[, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) ].”
¶ 29. Bradley filed a Motion for Post-Conviction Relief on February 12, 2014, arguing ineffective assistance of trial and appellate counsel: ■i-
Most importantly, for one:of the-felonies serving as the básis for his habitual offender indictment under Sec. 99-19-83 (1980 Jackson-County, Mississippi conviction), Bradley served only seventy-"one (71) days :.not the requisite one year or more. His trial counsel failed to investigate that matter after Bradley requested him [to] do so, and failed to raise a defense at Bradley’s sentencing hearing.!. Documents were available at the time of Bradley’s trial from the Jackson County. Circuit Clerk and Jackson County Sheriff showing that Bradley had in fact served only seventy-one (71) days on the 1980 conviction, having posfc-,ed an appeal bond after his conviction, Bradley was never incarcerated on that conviction after he posted bond
On February 6, 2014, a panel of this Court granted Bradley, leave to seek post-conviction relief in the Circuit Court of Lauder-dale County on the issue of whether Bradley had served one year or more for the 1980 Jackson- County burglary conviction. According to Bradley’s complaint in the present legal malpractice case, “[o]n April 30, 2014[,] the Lauderdale County Circuit Court entered its Order Vacating Sentence by which Bradley’s aforesaid life sentence was vacated.” Bradley since has been released from prison.
•¶ 30. As in Smith, “[questions of material fact exist” relating to whether Bradley knew “or through the exercise of reasonable diligence should [have known] of the negligence of his lawyer” as of the date of sentencing, June , 15, 2004. Smith, 638 *446 So.2d at 1253. In Smith, whether the constable,' a lay person, adequately had' informed Smith regarding the contents of the exculpatory autopsy report “in a manner sufficient to put Smith on notice that his attorney had been negligent was a fact question for jury determination.” Id. at 1258. Here, a jury question exists regarding whether Bradley, a lay criminal defendant, knew or through the exercise of reasonable diligence should have .known of his lawyer’s negligence in failing to investigate the underlying crimes used by the State to support Bradley’s status as an hahitual offender.
¶ 31. Both the Mississippi Court of Appeals and the United States District Court for the Southern District of Mississippi rejected Bradley’s claims; It was' not until February 6, 2015, that this Court granted leave to Bradley to pursue his post-conviction claims, and it was not until April 30, 2014, that his sentence was vacated. While I agree with the majority that no bright-line rule exists that the statute of limitations does not begin to run until a conviction has been overturned, as in Smith, a jury ought to decide the fact question of the point at which lay criminal defendants knew or should by reasonable diligence have known of their lawyers’ negligence. In deciding Smith, this Court quoted a Texas commentator: “ ‘[i]t is unrealistic to expect a layman to perceive an injury at the time of the negligent act or omission of his attorney.’” Smith, 638 So.2d at 1257 (quoting Willis v. Maverick, 760 S.W.2d 642, 645 (Tex.1988) (quoting Ward, Legal Malpractice in Texas, 19 S. Tex. L.J. 587, 613 (1978))).
¶32. A genuine issue of material fact exists regarding the point at which Billy Ray Bradley discovered, or by reasonable diligence should have discovered, his counsel’s negligence. Because I would reverse the grant of summary judgment to Jordan by the Lauderdale County Circuit Court, I respectfully dissent.
WALLER, C.J., AND KING, J, JOIN THIS OPINION.

. Bradley was represented on direct appeal by the Office of Indigent Appeals. Bradley v. State, 934 So.2d 1018, 1021 (Miss.Ct.App.2005).